53 P.3d 26 (2002)
147 Wash.2d 238
STATE of Washington, Petitioner,
v.
Jeremy Mark READ, Respondent.
No. 71188-7.
Supreme Court of Washington, En Banc.
Argued January 29, 2002.
Decided September 5, 2002.
*28 David Koch, Seattle, for Petitioner.
Gary A. Riesen, Chelan County Prosecutor, Douglas Shae, Deputy, Wenatchee, for Respondent.
*27 JOHNSON, J.
This case involves a challenge to an evidentiary ruling by the trial court in a criminal prosecution where the defendant claimed self-defense. The trial court admitted lay opinion testimony on whether it was reasonable for the defendant, Jeremy M. Read, to use deadly force in self-defense. We are asked to determine whether Read's second degree murder conviction should be reversed based on the admission of that testimony. The Court of Appeals affirmed the conviction, holding Read was not prejudiced by the testimony. State v. Read, 100 Wash.App. 776, 998 P.2d 897, review granted, case remanded, 142 Wash.2d 1007, 13 P.3d 1065 (2000), adhered to on remand, 106 Wash.App. 138, 22 P.3d 300 (2001). We affirm.

FACTS
Read shot and killed Bruce Larson, Jr., at the Orchard Inn in Wenatchee, Washington on May 3, 1998. Read had traveled to Wenatchee to attend the Apple Blossom Festival. Upon arriving, Read met his underage girl friend at a gas station, where she gave him her gun while she attempted to purchase beer. Read put the gun in the waistband of his shorts and concealed it with the athletic pants he was wearing over his shorts.
While his girl friend was gone, Read left with friends to go to a party. He walked past a motel room rented by another Apple Blossom reveler, where approximately 12 people were having a party. Read recognized a young woman with whom he had attended high school. She invited Read into the motel room and the two sat at the foot of the bed talking.
While the two talked, Chad Larson, Bruce's brother, repeatedly told Read to leave. When Read did not respond, Bruce, who was unarmed and also sitting on the bed, stood up and said something approximating, "don't get smart with my brother, man." Report of Proceedings at 286. Read pulled the gun from his waistband and shot and killed Bruce.
At trial, Read and one other witness testified Bruce "jumped" or "hopped" off the bed and stepped toward Read. Several other witnesses testified Bruce did not "jump" up and did not "rush" Read, but simply approached him. Witnesses also testified Bruce raised his arms at his sides. Every witness except Read testified Bruce did not verbally threaten Read or do anything that appeared threatening. Many witnesses testified Read had no reason to defend himself and no reason to pull out the gun. This is the challenged testimony.
Read was charged with second degree murder, first degree assault, and unlawful possession of a firearm. Read claimed he killed Bruce in self-defense. The trial court rejected his self-defense claim, and Read was convicted as charged.
The Court of Appeals vacated Read's assault conviction on double jeopardy grounds, but affirmed his second degree murder and wrongful possession convictions. Read, 100 Wash.App. 776, 998 P.2d 897. The court concluded the trial court violated Read's constitutional right to an impartial trial by allowing witnesses to opine as to the reasonableness of Read's actions. Assuming Read was *29 entitled to raise a self-defense claim, the court concluded the opinion testimony went to the ultimate issue of whether Read killed Bruce without justification. Nonetheless, the court held the error was not prejudicial. In so holding, the Court of Appeals presumed the trial judge did not consider inadmissible evidence in reaching his decision. Read, 100 Wash.App. at 788, 998 P.2d 897 (citing State v. Miles, 77 Wash.2d 593, 601, 464 P.2d 723 (1970); and State v. Ryan, 48 Wash.2d 304, 293 P.2d 399 (1956)).
On review, we remanded the case to the Court of Appeals for reconsideration in light of our decision in State v. Palomo, 113 Wash.2d 789, 783 P.2d 575 (1989). On remand, the Court of Appeals held Palomo did not mandate a more rigorous standard of review and reaffirmed Read's convictions. The court held Read had failed to rebut the Miles presumption that judges in bench trials do not consider inadmissible evidence when rendering decisions. Read, 106 Wash. App. at 147-48, 22 P.3d 300. The court noted, however, it would have affirmed Read's convictions under a harmless error standard of review. Read contends the Court of Appeals erred by applying the Miles presumption.
We hold Read was not entitled to raise a self-defense claim and admitting the opinion testimony was not constitutional error. Therefore, this case does not present the question of whether Miles applies to evidentiary errors of constitutional magnitude. We affirm Read's conviction because in the absence of evidence to the contrary, we presume the judge in a bench trial does not consider inadmissible evidence in rendering a verdict.

ANALYSIS
To raise a self-defense claim in a murder prosecution, a defendant must produce some evidence to establish the killing occurred in circumstances amounting to defense of life and produce some evidence he or she had a reasonable apprehension of great bodily harm and imminent danger. RCW 9A.16.050; State v. Walker, 136 Wash.2d 767, 772, 966 P.2d 883 (1998). To determine whether a defendant is entitled to an instruction on self-defense or entitled to have a judge consider it in a bench trial, the trial court must view the evidence from the standpoint of a reasonably prudent person who knows all the defendant knows and sees all the defendant sees. Walker, 136 Wash.2d at 772, 966 P.2d 883. Accordingly, when assessing a self-defense claim, the trial court applies both a subjective and objective test. Walker, 136 Wash.2d at 772, 966 P.2d 883.
When subjectively assessing a defendant's self-defense claim, the trial court must place itself in the defendant's shoes and view the defendant's acts in light of all the facts and circumstances the defendant knew when the act occurred. Walker, 136 Wash.2d at 772, 966 P.2d 883. When objectively assessing a defendant's claim, the trial court must determine what a reasonable person would have done if placed in the defendant's situation. Walker, 136 Wash.2d at 772, 966 P.2d 883. Considering both the subjective and objective inquiries, the trial court must determine whether the defendant produced any evidence to support the claim he or she subjectively believed in good faith he or she was in imminent danger of great bodily harm and whether this belief, viewed objectively, was reasonable. Walker, 136 Wash.2d at 773, 966 P.2d 883.
The standard of review when the trial court has refused to instruct the jury on self-defense depends on why the court refused the instruction. Walker, 136 Wash.2d at 771-72, 966 P.2d 883. If the trial court refused to give a self-defense instruction because it found no evidence supporting the defendant's subjective belief of imminent danger of great bodily harm, an issue of fact, the standard of review is abuse of discretion. If the trial court refused to give a self-defense instruction because it found no reasonable person in the defendant's shoes would have acted as the defendant acted, an issue of law, the standard of review is de novo. Walker, 136 Wash.2d at 771-72, 966 P.2d 883. In this case, the trial court refused to consider Read's self-defense claim for both objective and subjective reasons. We will first address whether the trial court abused its discretion in finding Read did not *30 produce sufficient evidence to support his claim he subjectively believed in good faith he was in imminent danger of great bodily harm.
A person is justified in using deadly force in self-defense only if the person reasonably believes he or she is in imminent danger of death or great personal injury. RCW 9A.16.050(1). Great personal injury is that which would result in "severe pain and suffering." State v. Walden, 131 Wash.2d 469, 477, 932 P.2d 1237 (1997). Read testified only that he believed Bruce was angry, that Bruce stepped toward him and moved his arms, and that Read did not have a clear path to the door. Read testified he thought he was going to get hurt and "panicked." Report of Proceedings at 346. But even if Read reasonably believed he could get hurt, that does not excuse the use of deadly force. Read falls far short of producing evidence demonstrating he reasonably believed he was in imminent danger of death or great personal injury. Because Read failed to satisfy the subjective element of self-defense, we hold the trial court did not abuse its discretion by refusing to consider self-defense. Because Read failed to satisfy the subjective element of self-defense, we need not review the trial court's finding regarding the objective element of self-defense.
Because we hold Read was not entitled to raise a self-defense claim, the challenged testimony was not an impermissible opinion of his guilt or innocence. Evidence is relevant only if it tends to make the existence of any fact of consequence more or less probable. ER 401. Whether a reasonable person would have acted as Read acted was not a fact of consequence at trial. Therefore, the opinion testimony in this case was irrelevant. Admitting the challenged testimony may have been error, but it was not error of a constitutional magnitude.
The admission of the irrelevant testimony does not warrant reversing Read's convictions because we presume the trial judge did not consider inadmissible evidence in rendering the verdict, and the remaining evidence supports Read's convictions. State v. Miles, 77 Wash.2d 593, 464 P.2d 723 (1970). In Miles, a bench trial, the defendant claimed the court erroneously admitted a toy pistol into evidence. We held the admission of the toy pistol was error, but presumed the trial judge did not consider the toy pistol in rendering the verdict. Miles, 77 Wash.2d at 602, 464 P.2d 723. Accordingly, we held the admission of the toy pistol was not reversible error because there was sufficient admissible evidence to sustain the conviction. Miles, 77 Wash.2d at 602, 464 P.2d 723.
Bench trials place unique demands on judges, requiring them to sit as both arbiters of law and as finders of fact. For example, judges in bench trials may be asked to exclude probative evidence on the ground it is unfairly prejudicial. No judge could rule on such a request without considering the challenged evidence. And yet, in a bench trial, it is the consideration of such evidence by the judge that the objecting party seeks to prevent. The same is true of all challenged evidence in a bench trial.
Like our decision in Miles, other courts acknowledge the unique demands of bench trials:
It must be recognized that the very nature of the duties of a judge often require him to have knowledge of inadmissible evidence. Every time he makes a ruling determining evidence inadmissible, he has to know what the inadmissible evidence consists of, and if he is the fact finder, he must eliminate [this evidence] from his consideration in determining the facts.
Hawkins v. Marion Corr. Inst., 62 Ohio App.3d 863, 869, 577 N.E.2d 720, overruled on other grounds by, 55 Ohio St.3d 705, 562 N.E.2d 898 (1990). Nonetheless, virtually no United States court has held this process to be unfair. "In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions." Harris v. Rivera, 454 U.S. 339, 346, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981).
In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission *31 of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made.
Builders Steel Co. v. Comm'r of Internal Revenue, 179 F.2d 377, 379 (8th Cir.1950).
The Miles presumption is rebuttable. A defendant can rebut the presumption by showing the verdict is not supported by sufficient admissible evidence, or the trial court relied on the inadmissible evidence to make essential findings that it otherwise would not have made. Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc., 104 F.3d 1050, 1057 (8th Cir.1997). Sufficient admissible evidence supports Read's conviction for second degree murder, and Read has not shown the trial judge relied on the inadmissible evidence to make essential findings that it otherwise would not have made.

CONCLUSION
We hold Read did not make a sufficient threshold showing to support his claim of self-defense, and the trial judge's admission of irrelevant testimony was not reversible error. We affirm the Court of Appeals.
JOHNSON, SMITH, BRIDGE, CHAMBERS and OWENS, JJ., concur.
MADSEN, J., concurs in result only.
IRELAND, J. (concurring).
I agree with the dissent that inadmissible evidence which was objected to and overruled should not be subject to the Miles exception, if relevant and relied upon by the judge to make a finding of guilt. State v. Miles, 77 Wash.2d 593, 601, 464 P.2d 723 (1970) (finding presumption that judge in a bench trial did not consider inadmissible evidence).
However, much of the testimony objected to in the dissent was not opinion evidence, it was reporting observations or what was heard or not heard. This kind of evidence is required to be elicited by the state because our case law places upon the state the burden of proving absence of self-defense beyond a reasonable doubt. State v. McCullum, 98 Wash.2d 484, 491-96, 656 P.2d 1064 (1983). Some of the state's questions could have been more artfully posed to elicit fact rather than conclusion.
Nonetheless, under either an abuse of discretion standard or a de novo review, the testimony complained about was irrelevant. Taking Read's testimony unrebutted by any other testimony, it does not meet the requirements either on an objective or subjective basis for self-defense. Read offered no evidence that he was in reasonable apprehension of great bodily harm and imminent danger. RCW 9A.16.050; State v. Walker, 136 Wash.2d 767, 966 P.2d 883 (1998). Under these circumstances, any opinion evidence was irrelevant and any error by the judge in admitting or relying on such evidence was harmless.
SANDERS, J. (dissenting).
I posit admission of opinion testimony from all seven of the state's eyewitnesses was an error of constitutional magnitude that compromised Read's constitutional right to an impartial trial; the Miles presumption[1] does not apply to errors of constitutional magnitude because it would impermissibly shift the burden from the state to the defendant to prove harm; and the state failed to meet its burden to prove beyond a reasonable doubt the constitutional error did not contribute to the trial judge's finding of guilt. Thus, I would reverse Read's murder conviction and remand for a new trial.
I. THE COURT OF REVIEW MUST FIRST DETERMINE THE MAGNITUDE OF THE ERROR BEFORE EVALUATING ITS EFFECT ON THE VERDICT.
When a defendant alleges an error of constitutional magnitude, the appellate court first determines whether the trial court erred, then whether the error was of constitutional *32 magnitude, and if so, finally, whether the state met its burden to prove the error was harmless beyond a reasonable doubt. See, e.g., State v. Easter, 130 Wash.2d 228, 234-42, 922 P.2d 1285 (1996).
But our majority begins not with the alleged error but rather with the substantive issue of Read's self-defense claim. Majority at 30. Concluding it agrees with the trial court that Read failed to satisfy the subjective element of self-defense,[2] the majority then construes the state's opinion testimony about the validity of Read's self-defense claim as merely irrelevant, "not an impermissible opinion of his guilt or innocence," thus bootstrapping its final conclusion that the admission of the inadmissible testimony was "not error of a constitutional magnitude." Id. at 30, 31.
However, the purpose of review is to ensure procedural fairness, not to present the state an opportunity to reprosecute its case before an appellate court. See, e.g., State v. Stein, 144 Wash.2d 236, 247, 27 P.3d 184 (2001) ("When a defendant is convicted under alternative theories, one acceptable and the other based on an erroneous instruction, this court has not been willing to substitute its judgment for that of the jury by inferring that the verdict was reached under the correct instruction."); State v. Golladay, 78 Wash.2d 121, 140, 470 P.2d 191 (1970) ("It is not our purpose in discussing these facts to act as a `superjury[.]'"), overruled on other grounds by State v. Arndt, 87 Wash.2d 374, 553 P.2d 1328 (1976); Ritzschke v. Dep't of Labor & Indus., 76 Wash.2d 29, 31, 454 P.2d 850 (1969) (where findings are supported by record, appellate court will not substitute its judgment for that of trial court).
The majority errs, affirming the trial judge's verdict on the substantive issue of Read's self-defense claim. That issue is not before this court. The sole issues before this court are whether the trial court erred when it admitted the inadmissible opinion testimony, whether the error was of constitutional magnitude, and whether we can say, beyond a reasonable doubt, that the error did not affect the verdict.
II. ADMISSION OF INADMISSIBLE OPINION TESTIMONY WAS AN ERROR OF CONSTITUTIONAL MAGNITUDE
Rule of Evidence 701 governs the admissibility of opinion testimony by lay witnesses. It requires lay opinion be limited to that which is "rationally based on the perception of the witness and [is] helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." ER 701. As recently as last year this court held, "no witness may offer testimony in the form of an opinion regarding the guilt ... of the defendant; such testimony is unfairly prejudicial to the defendant `because it "invad[es] the exclusive province of the [jury]."'" State v. Demery, 144 Wash.2d 753, 759, 30 P.3d 1278 (2001) (alterations in original) (quoting City of Seattle v. Heatley, 70 Wash. App. 573, 577, 854 P.2d 658 (1993) (quoting State v. Black, 109 Wash.2d 336, 348, 745 P.2d 12 (1987))). "An opinion as to the defendant's guilt is an improper lay or expert opinion because the determination of the defendant's guilt or innocence is solely a question for the trier of fact." State v. Carlin, 40 Wash.App. 698, 701, 700 P.2d 323 (1985), overruled on other grounds by City of Seattle v. Heatley, 70 Wash.App. 573, 854 P.2d 658 (1993) (citing State v. Garrison, 71 Wash.2d 312, 315, 427 P.2d 1012 (1967)). As we have reiterated, "[n]o witness, lay or expert, may testify to his opinion as to the guilt of a defendant, whether by direct statement or inference." State v. Black, 109 Wash.2d 336, 348, 745 P.2d 12 (1987) (emphasis added). Admission of "impermissible opinion testimony regarding the defendant's guilt may be *33 reversible error because admitting such evidence `violates [the defendant's] constitutional right to a jury trial, including the independent determination of the facts by the jury.'" Demery, 144 Wash.2d at 759, 30 P.3d 1278 (quoting Carlin, 40 Wash.App. at 701, 700 P.2d 323) (citing Dubria v. Smith, 224 F.3d 995, 1001-02 (9th Cir.2000), cert. denied, 531 U.S. 1148, 121 S.Ct. 1089, 148 L.Ed.2d 963 (2001)).
More than 50 years ago we recognized the constitutional guaranty of an impartial trial does not distinguish between jury and bench trials. State ex rel. McFerran v. Justice Court of Evangeline Starr, 32 Wash.2d 544, 548-49, 202 P.2d 927 (1949). We held, "[t]here can be no question ... the Federal and our state constitutions guarantee to a defendant a trial before an impartial tribunal, be it judge or jury." Id. at 548, 202 P.2d 927. We explained:
[B]oth the Federal and our state constitutions guarantee to a defendant in a criminal cause a trial before an impartial jury. We see no difference, in so far as the effect of the above guarantee is concerned, whether a defendant is tried before a judge or a jury.
Id. at 549, 202 P.2d 927; see also Carlin, 40 Wash.App. at 701-02, 700 P.2d 323 (concluding "in a nonjury trial a witness' opinion as to the defendant's guilt violates the defendant's jury trial right by invading the province of the impartial fact finder") (citing State v. Garrison, 71 Wash.2d 312, 315, 427 P.2d 1012 (1967); McFerran, 32 Wash.2d at 549, 202 P.2d 927; Stepney v. Lopes, 592 F.Supp. 1538, 1547-49 (D.Conn.1984), aff'd, 760 F.2d 40 (2d Cir.1985)).
The Court of Appeals opinion correctly held an ER 701 error violates a criminal defendant's constitutional right to an impartial trial. Read, 106 Wash.App. at 144, 22 P.3d 300. It correctly concluded several of the questions "`appear to have crossed the line [and] went beyond mere perceptions of the witnesses and addressed the very heart of Mr. Read's self-defense claim.'" Id. (quoting State v. Read, 100 Wash.App. 776, 787, 998 P.2d 897 (2000)). But it listed only a few examples of such unconstitutional testimony:
"For example, the prosecutor sought improper opinion evidence by asking Mr. Walsh if there was `any reason for Mr. Read at that point to defend himself'; by asking Ms. McIntosh if Mr. Read `ha[d] to pull out a weapon at that time,' if he `ha[d] to shoot Mr. Larson,' if `anybody ma[d]e him defend himself,' or if there was any reason why Mr. Larson `needed to be shot'; and by asking Ms. Flom if there was any reason why Mr. Larson was shot or for Mr. Read to defend himself. These questions solicited opinions that, at least by inference, went directly to the validity of Mr. Read's defense, and thus his guilt."
Id. (alterations in original) (quoting Read, 100 Wash.App. at 787, 998 P.2d 897).
A review of the record reveals the testimony, correctly deemed improper and unconstitutional by Division Three, was not so confined to simply that enumerated in the appellate court's opinion. Instead, it pervaded the trial. As with the evidence erroneously admitted during the testimony of Josh Walsh, Kim McIntosh, and Veronica Flom, the same or substantially similar questions were posed to and similar questions elicited from Kelan Walsh, Heather Bel, Sarah Campbell, and Chad Larson.
Seven eyewitnesses testified for the state. On numerous occasions each gave their opinion on the validity of Read's self-defense claim. In relevant part their testimony is set out below:
Kelan Walsh:
Q .... Did Bruce Larson threaten Jeremy [Read]?
A To me he didn't. All he didhe just jumped up and said, don't get a smart mouth.
Verbatim Report of Proceedings (RP) at 125:9-11.[3]
Q Did Bruce do anything to cause Mr. Read to defend himself?
*34 A Like I say, he just got up and said, don't get a smart mouth. I don't know if he was trying to start a fight or anything but that's all I remember.
RP at 127:5-8.
Heather Bel:
Q Did [Bruce Larson] threaten [Read]?
A No.
RP at 158:18-19.
Q.... [D]id Chad say anything to Mr. Read to cause him to shoot his brother?
A No.
Q Were there any threats at all in the room made to Mr. Read that evening?
A No.
RP at 160:16-21.
Q Did you see, before the handgun came out, ... Mr. Bruce Larson attempting in any way to threaten Mr. Read?
A No.
RP at 178:16-18.
Josh Walsh:
Q Did [Bruce Larson] threaten [Read]? Did he rush him?
A Not to my knowledge. He didn't look like he was threatening him or anything.
Q Was there any reason for Mr. Read at that point to defend himself?
A No.
MR. ZANOL [Read's counsel]: Objection.
MR. SHAE [Prosecutor]: I think he can answer that question, Your Honor. That's one of the elements of this particular crime.
THE COURT: I'll overrule.
Q (By Mr. Shae) Did Chad threaten him or anything like that?
A Not to my knowledge, no.
Q Did anybody threaten Mr. Read in that room that night?
A No.
RP at 188:10-23.
Q Was it surprising to you that someone would react [the way Read did]?
A Yeah. This is the first time I've ever seen anything happen like that.
Q Was there any reason for Mr. Read to pull this weapon out?
A No.
Q Was there any reason for Mr. Read to, after he pulled it out, shoot it?
A No.
RP at 190:7-15.
Sarah Campbell:
Q Was there any reason for the person who shot [Bruce Larson] to defend himself?
A No.
RP at 215:17-19
Q At any point did anybody in the room threaten the person that you saw with the gun?
A No. I didn't hear anybody threaten anybody.
RP at 216:1-3.
Kim McIntosh:
Q Did [Bruce Larson] threaten anybody?
A No.
. . . .
Q Did Mr. Read have to pull out a weapon at that time?
A No.
Q Could he have turned around and walked out of that room?
A Yes.
Q Did he have to shoot Mr. Larson?
A No.
Q Did anybody threaten Mr. Read?
A No.
Q Did anybody make him defend himself?
A No.
RP at 233:11-24.
Q And could Mr. Read have just as likely walked out of that room?
A Yeah.
Q And was there any reason why ... Mr. Larson ... needed to be shot?
A No.
Q Anything that Chad said ... that would cause Mr. Read to shoot his brother?
*35 A No.
RP at 252:6-15.
Chad Larson:
Q Is there anything you could have said or done that particular evening that could have caused the defendant to shoot your brother?
A No.
Q Did anybody in the room threaten [Read]?
A No.
RP at 267:13-18.
Q Could Mr. Read have walked out of that room that night?
A Yes.
RP at 268:23-25.
Veronica Flom
Q Did [Bruce Larson] threaten Mr. Read?
A No, he didn't.
RP at 287:23-24.
Q Is there any reason that you could see why Mr. Larson should be shot that night?
A No.
Q Was there any reason that anybody needed to defend themself [sic] in that manner?
A No.
Q Was there any reason anybody needed to defend them themself [sic] in any manner?
A No.
RP at 295:17-25.
All of this opinion evidence violated ER 701 and compromised Read's constitutional right to an impartial trial.
III. MILES PRESUMPTION
Notwithstanding its determination that admission of impermissible testimony on the defendant's guilt violated Read's constitutional right to a fair trial, the Court of Appeals affirmed Read's conviction under the Miles presumption that the trial judge in a bench trial will not consider matters which are inadmissible when making his findings. Read, 106 Wash.App. at 144-46, 22 P.3d 300. This was error and our majority simply repeats it.[4]
Where an error infringes upon a defendant's constitutional rights the error is presumed prejudicial, and the state has the burden to prove it was harmless. State v. Caldwell, 94 Wash.2d 614, 618, 618 P.2d 508 (1980). But by applying the Miles presumption to the trial judge's erroneous admission of opinion testimony the Court of Appeals reversed the presumption of harm. See Read, 106 Wash.App. at 144-45, 22 P.3d 300.
The Miles presumption has never been applied when reviewing constitutional errors. The authority the Court of Appeals relied on, State v. Melton, 63 Wash.App. 63, 68, 817 P.2d 413 (1991) and State v. Hadd, 127 Ariz. 270, 275, 619 P.2d 1047 (Ct.App.1980), is inapposite because in both cases the reviewing court concluded there was no error. Read, 106 Wash.App. at 147 n. 1, 22 P.3d 300; see Melton, 63 Wash.App. at 68-70, 817 P.2d 413 (concluding no error); Hadd, 127 Ariz. at 275, 619 P.2d 1047 (same).
In point of fact the Miles presumption has been applied only on appeals of bench trials with alleged nonconstitutional evidentiary errors. See, e.g., State v. Adams, 91 Wash.2d 86, 92-93, 586 P.2d 1168 (1978) (concluding no prejudice from leading questions in bench trial). On the other hand, harmless constitutional error analyses have been performed consistently when reviewing constitutional errors made in bench trials. See, e.g., State v. Palomo, 113 Wash.2d 789, 798-99, 783 P.2d 575 (1989); State v. Wethered, 110 Wash.2d 466, 474-75, 755 P.2d 797 (1988); State v. Silva, 108 Wash.App. 536, 542, 31 P.3d 729 (2001).
*36 Moreover when this court adopted the harmless error rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), it also adopted the correlative presumption of harm to the defendant. State v. Johnson, 71 Wash.2d 239, 244-45, 427 P.2d 705 (1967). In Chapman, the United States Supreme Court stated "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." Id. at 22, 87 S.Ct. 824. However, it warned that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Id. at 24, 87 S.Ct. 824. Additionally, Chapman indicated that some constitutional rights may be so basic to a fair trial that their infraction can never be treated as harmless error. Id. at 23, 87 S.Ct. 824. The presumption of harm is therefore a necessary component of the harmless error analysis.
Further, the Miles presumption is predicated on practical concerns, not on safeguarding a defendant's constitutional rights. See, e.g., Note, Improper Evidence in Nonjury Trials: Basis for Reversal?, 79 Harv. L.Rev. 407, 409-10 (1965) (The purpose of the presumption is "to save time that would otherwise be spent hearing arguments on `nice' evidentiary points."). Thus, an extension of the Miles presumption to evidentiary errors of constitutional magnitude is inappropriate.
Accordingly, when reviewing a constitutional evidentiary error made in a bench trial, as with other constitutional error, the proper standard of appellate review is to determine whether the state can prove such constitutional error was harmless beyond a reasonable doubt.
However, even if the Miles presumption applied to constitutional errors, as the majority notes, it is a rebuttable presumption. Majority at 31. Here the record rebuts the presumption the trial judge did not rely on the state's inadmissible evidence. First, in his Findings of Fact and Conclusions of Law on Bench Trial, the trial judge summarized the witness testimony, expressly noting:
(1) Kelan Walsh's testimony that Read "did not have to defend himself,"
(2) Heather Bel's testimony "that there were no threats made to Mr. Read,"
(3) Josh Walsh's testimony "that Mr. Read was never threatened,"
(4) Sarah Campbell's testimony that "no threats [were] being made to anybody,"
(5) Kim McIntosh's testimony that Bruce Larson "made no threats" and "Mr. Read did not have to shoot or kill Mr. Larson,"
(6) Chad Larson's testimony "that Mr. Read could have turned and walked out of the room [and] there were no threats made toward him," and
(7) Veronica Flom's testimony that Bruce Larson "did not threaten [Read]."
Clerk's Papers (CP) at 85-89.
The judge then concluded:
[T]he facts of this case do not establish that this homicide was justifiable because the court cannot conclude under the facts of this case that Mr. Read reasonably felt that he was in any danger from Bruce Larson, Jr. because Mr. Read's belief has to be reasonable. The court finds that the testimony of the witnesses of the State is reliable in that the testimony was convincing that Mr. Read could have turned around and walked out of the room or that he did not have to shoot Mr. Larson, and that everybody had frozen and stopped when he pulled out the weapon. He also further aimed that weapon directly at Mr. Larson. Also, the evidence in this case would not support any conclusion that Mr. Bruce Larson, Jr. was threatening Mr. Read with either a felony or with death or with great personal injury. Again, the court finds that the testimony of the State's witnesses is convincing. There are also no facts in this case to support a conclusion that Mr. Read was in imminent danger of such harm being accomplished to him. The court concludes that the State has proven beyond a reasonable doubt that Mr. Larson's death was not justified.
CP at 92 (emphasis added). Where, as here, a trial judge openly refutes the presumption *37 he did not consider inadmissible evidence, we cannot conclude otherwise. Thus, even if our precedent allowed the application of the Miles presumption to errors of constitutional magnitude, it would not apply to the facts of this case.
IV. STATE DID NOT MEET ITS BURDEN TO PROVE BEYOND A REASONABLE DOUBT THE ERROR WAS HARMLESS
As discussed supra in section II, the admission of inadmissible testimony compromised Read's Sixth Amendment right to an impartial trial. The only remaining issue is whether the state proved beyond a reasonable doubt that the ubiquitous unconstitutional opinion evidence in Read's trial did not contribute to the finding of his guilt. See, e.g., State v. Easter, 130 Wash.2d at 242, 922 P.2d 1285 (requiring the state to prove "beyond a reasonable doubt any reasonable jury would reach the same result absent the error").
I posit the state has not met this burden. At the outset, the trial judge improperly overruled a defense objection to its admissibility. RP at 188:10-23. Furthermore, the erroneous opinion testimony pervaded the trial. All seven eyewitnesses for the state provided improper opinions on the defendant's self-defense claim and therefore his guilt. It is also evident the trial judge relied on this evidence in rendering Read's guilty verdict as the judge's written findings are replete with references to the unconstitutional testimony. CP at 85-89. Moreover, in his conclusions, the trial judge twice characterized the testimony of the state's witnesses regarding the threat of harm to Mr. Read as "convincing." CP at 92.
The record simply does not support our majority's bald assertion that the error was harmless beyond a reasonable doubt. Indeed, it gives every indication the error was very harmful.
For these reasons, I respectfully dissent.
ALEXANDER, C.J., concurs.
NOTES
[1] In State v. Miles, 77 Wash.2d 593, 601, 464 P.2d 723 (1970) we articulated a presumption on review that a judge in a bench trial did not consider inadmissible evidence.
[2] The defendant is not required to prove self-defense. State v. McCullum, 98 Wash.2d 484, 491-96, 656 P.2d 1064 (1983). Due process requires the state to prove the absence of self-defense beyond a reasonable doubt. Id. Contrary to the majority's contention, Read did produce some evidence that he had a reasonable apprehension of great bodily danger and imminent danger. Specifically he stated he was threatened by Bruce Larson, he believed Bruce was angry, Bruce was coming quickly at him, and the crowd of people he did not know blocked his way out. Report of Proceedings (RP) at 341-46. Read thought he was going to be hurt and "panicked." RP at 346:21. Furthermore, other people Read did not know were both in front of and behind Read. RP at 147:6-10, 170:17-172:21, 345:6-25.
[3] Citation is made to the verbatim report of the trial proceeding instead of the court's written findings of fact because, in this case, the latter represents merely a summary of the witnesses' testimony.
[4] The majority reasons that because trial judges in bench trials "sit as both arbiters of law and as finders of fact" and must consider, for example, the very evidence that is the subject of a motion to exclude evidence to rule on the motion, we can presume they disregard inadmissible evidence when reaching their decisions. Majority at 30. However, our majority misses the point. Read does not dispute the trial court's ability to disregard properly excluded evidence, but rather its failure to exclude the inadmissible opinion evidence and its overt reliance on such evidence in its conclusions of law.