**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79070-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| TERRELL RAKAI WALL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 11, 2019 |
| | ) | |

MANN, A.C.J. — Terrell Wall appeals his conviction for first degree burglary and two counts of second degree assault. Wall contends that the trial court erred by admitting hearsay evidence and not instructing the jury on self-defense for the burglary charge. We affirm.

I.

The State charged Wall with two counts of first degree assault and first degree burglary, stemming from an incident on September 17, 2015, when Wall unlawfully entered Danae Lizotte's apartment and stabbed Lizotte and her boyfriend James Heim.

The evening before the incident, Wall, Lizotte, and Heim were socializing at the home of a mutual friend, Nick Caratachea. At some point during the evening, Lizotte

rejected an advance by Wall. Lizotte and Heim left together and spent the night at Lizotte's apartment in Tacoma.

The next morning, Lizotte received Facebook messages from Wall saying "[h]ey, I really didn't mean anything I said to you last night. Okay. I'll understand if you want to end our friendship." Lizotte did not respond. An hour later, Wall appeared at Lizotte's bedroom window. Both Heim and Lizotte were still in bed. Lizotte told Heim that she thought Wall was there to apologize.

Lizotte invited Wall inside the apartment to talk. From the hallway, Wall could see that Heim was lying in Lizotte's bed. Wall appeared startled that Heim was there, and asked Lizotte if they could talk outside. Once outside on the porch, Wall grabbed Lizotte's phone and accused her of cheating on Heim. Wall pushed Lizotte against the wall and smashed her phone.

Heim heard Lizotte yelling "stop hitting me," "give me my phone back" and heard the phone hit the ground. Heim, wearing only his undershirt and boxers, went outside to investigate. Heim positioned himself between Wall and Lizotte. Wall told Heim that Lizotte had cheated on him and the proof was on her phone.

Heim told Lizotte that they should go inside. As Lizotte followed Heim inside, she tried to close and lock the door behind her but Wall pushed his way inside the apartment. Wall then shoved Lizotte, causing her to fall against a dresser. Lizotte blacked out from the fall.

Heim, after witnessing Wall shove Lizotte, tried to punch Wall in the left temple. Heim indicated that his punch had no effect. Lizotte regained consciousness and saw Wall attacking Heim. Lizotte tried to punch Wall in the stomach, which also had no

effect. Lizotte attempted to get Wall off of Heim, but Wall shoved her against the wall and she blacked out for a second time. Heim felt a sharp sting on his right ear, reached over and recalled he could feel his skull bone. When Lizotte regained consciousness, she saw Heim's "ear hanging off of his face." Heim shouted at Wall, "oh my god, you punched my ear off" and told Lizotte to call an ambulance. Wall fled the scene. Lizotte called 911 on Heim's phone. Lizotte noticed that Heim had two long stab wounds on his back, was very pale, and that his lips were turning white.

Lizotte's disabled parents were home during the incident. Before the ambulance arrived, Lizotte's mother pointed out that Lizotte also had two long slashes across her chest. Lizotte and Heim were taken to Tacoma General for treatment.

Shortly after Lizotte called 911, 911 dispatchers received a call from Wall. Wall told the dispatcher: "I got in a fight with my friend, I took my razor blade and I cut one of my friend's ear, my hand is injured, and I punched my friend in the face." Wall stated that he threw the weapon when he ran off and identified the weapon as a box cutter. When asked if Wall was injured, he indicated he had a cut on his hand from a box cutter. Wall also stated he was "turning himself in." The dispatcher realized that Wall was associated with the incident that authorities were currently responding to at Lizotte's apartment.

Wall went to St. Joseph's Hospital. While at the hospital, Wall called his friend Caratachea to tell him about the incident. Caratachea testified at trial that Wall believed he was cut by Heim's knife, but that Wall did not say he saw Heim holding a knife. Caratachea also testified that Heim was known to carry knives.

During trial, the State called treating physician, Dr. Benjamin Constance, Chief of Emergency Medicine at Tacoma General to testify about Heim's and Lizotte's injuries. Dr. Constance described Heim's injuries as life threatening lacerations across the base of his skull. Dr. Constance described Lizotte as a "very, very high acuity emergency patient" because "[s]he had penetrating wounds and lacerations" to her neck and chest area, which put her at a high risk for injury to her lungs and the blood vessels of the neck and arms.

Both Lizotte and Heim testified at trial. Neither remembers seeing Wall holding the box cutter. The box cutter was never recovered. On the day of the attack, Wall was wearing his Costco uniform, which included a box cutter.

Wall rested without presenting evidence. During closing arguments, the defense argued that Wall was acting in self-defense when he assaulted Lizotte and Heim, and that the State did not prove beyond a reasonable doubt that Wall had the requisite intent to find him guilty of burglary. The jury convicted Wall of first degree burglary and two counts of second degree assault. The jury also returned a special verdict form that Wall was armed with a deadly weapon during the commission of the burglary and assaults. Wall appeals.

II.

Wall first contends that the trial court wrongfully admitted statements made by Heim and Lizotte to medical personnel under the hearsay exception to medical diagnosis. We disagree.

We review admission of evidence under ER 803(a)(4), the hearsay exception for statements made for purposes of medical diagnosis or treatment, under an abuse of

-4-

discretion standard. <u>State v. Woods</u>, 143 Wn.2d 561, 602, 23 P.3d 1046 (2001) <u>overruled on other grounds by</u> <u>State v. Schierman</u>, ___ Wn.2d ___, 415 P.3d 106 (2018). Since trial courts are granted broad discretion when making evidentiary rulings, such rulings will be reversed only if based on manifestly unreasonable or untenable grounds. <u>State v. Dye</u>, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013).

ER 803(a)(4) provides that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are not excluded by the rule against hearsay. "The medical treatment exception applies to statements reasonably pertinent to diagnosis or treatment." <u>Woods</u>, 142 Wn.2d at 602 (citation omitted). Statements as to the causation of the injury are admissible, while statements attributing fault are excluded. <u>Woods</u>, 142 Wn.2d at 602 (citing 5A KARL B. TEGLAND, WASHINGTON PRACTICE § 367, at 224 (2d ed. 1982)). A statement is "reasonably pertinent when (1) the declarant's motive in making the statement is to promote treatment and (2) the medical professional reasonably relied on the statement for purposes of treatment." <u>State v. Williams</u>, 137 Wn. App. 736, 746, 154 P.3d 322 (2007).

Wall objects to two statements, one by Heim and one by Lizotte, as attributing fault to Wall and not being reasonably pertinent to diagnosis or treatment. During direct examination, Dr. Constance described the importance of a patient's "subjective history" in accurately treating the patient. Dr. Constance stated "[i]n the history of present illness, the patient's subjective history and the history that is provided by the patient is summarized as it pertains to the nature of the illness and it helps us in making a

diagnosis and anticipating the potential injury." The State then inquired into the nature of Heim's injuries and how they occurred. Dr. Constance responded that "the patient alleged that he was defending a female and was stabbed by what he believed to be a box knife."

Dr. Constance also testified to Lizotte's description of how she sustained her injuries stating "the patient alleges that she was involved in an altercation . . . her gentleman friend also involved in this altercation, having been occurred with somebody that was a known entity as well, and I believe she referred to him as a friend. I do not recall any recollection specific to what was used in the altercation." The State contends that neither of these statements identify a responsible party, and thus are not statements attributing fault to Wall.

Dr. Constance's testimony about Heim stating that he was stabbed with a "box knife" was properly admitted as reasonably pertinent to medical treatment. Heim's motive in making the statement was so doctors could adequately assess the necessary course of treatment. Dr. Constance indicated that he reasonably relied on the "nature or mechanism of injury" in course of treating the injury. Thus, the statement was properly admitted under ER 803(a)(4).

However, Dr. Constance's testimony that Lizotte identified her assailant as a "friend" and Heim indicated he was injured while "defending a female," are more problematic as they attribute fault. State v. Redmond, 150 Wn.2d 489, 78 P.3d 1001 (2003) is illustrative. In Redmond, our Supreme Court held that the trial court abused its discretion by admitting two unredacted portions of medical records that attributed fault to the defendant. The Court concluded that the statements "[Johnson] . . . was leaving

-6-

school yesterday and while on school grounds apparently an ex-student accosted and dragged Mr. Johnson from his auto" was inappropriate because referring to an "ex-student" attributed fault. Redmond, 150 Wn.2d at 497. Similarly, the statement "[Johnson] . . . was leaving school yesterday and was accosted in the parking lot by another male" was inappropriate. Redmond, 150 Wn.2d at 497.

The inadmissible statements in Redmond and Dr. Constance's testimony that identified the assailant as a "friend" are similar. While describing an assailant as a "friend" or "student" does not specifically identify the assailant, it does attribute fault to limited category of possible persons, including Wall. "Defending a female" also implies that Wall caused Heim's injuries, and thus attributes fault. Neither of these statements are reasonably pertinent to diagnosis or treatment. Thus, we conclude the trial court abused its discretion in failing to exclude this portion of Dr. Constance's testimony.

However, a nonconstitutional error is "harmless unless there is a reasonable probability, in light of the entire record, that the error materially affected the outcome of the trial." State v. Webb, 64 Wn. App. 480, 488, 824 P.2d 1257 (1992) (citation omitted). Since Wall had the opportunity to cross-examine both Lizotte and Heim, Wall's Sixth Amendment confrontation right was not implicated. U.S. Const. amend VI; see also Crawford v. Washington, 541 U.S. 36, 42, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). When the confrontation clause is not implicated, erroneous admission of evidence is analyzed under the nonconstitutional harmless error standard. State v. Gower, 179 Wn.2d 851, 854, 321 P.3d 1178 (2014). The admission of Dr. Constance's statement attributing fault to a "friend" is harmless error because other overwhelming evidence attributed fault to Wall. Wall admitted on the 911 call that he had been in a

-7-

fight with his friends and sliced one of his friend's ear with a box cutter. Wall's statements were admissible as statements against interest. ER 804(b)(3). Thus, while it was error to admit Dr. Constance's testimony attributing fault to Wall, the error was harmless.

### III.

Wall next contends that the trial court erred by refusing to instruct the jury on self-defense as to the burglary charge, denying Wall the right to present a defense and relieved the State of its burden of proof. We disagree.

The standard of review for a trial court's refusal to grant the jury instructions depends on whether the refusal was based on a matter of law or fact. State v. Walker, 136 Wn.2d 767, 771, 966 P.2d 883 (1998). A defendant is entitled to an instruction on self-defense when he presents some evidence of both his subjective good faith belief that he was in imminent danger of great bodily harm, and objectively, whether his belief was reasonable considering the defendant's situation. State v. Read, 147 Wn.2d 238, 243, 53 P.3d 26 (2002) (citation omitted). When a trial court denies a self-defense instruction because no reasonable person in the defendant's position would have acted as the defendant did, the standard of review is de novo. Read, 147 Wn.2d at 243. When a trial court denies a self-defense instruction because there is a lack of evidence supporting the subjective prong, the standard of review is abuse of discretion. Read, 147 Wn.2d at 243. Here, the trial court rejected the defendant's proposed instruction as a matter of law, thus the standard of review is de novo.

The trial court instructed the jury on self-defense as to the two assault charges and included a first aggressor instruction. The trial court refused to instruct the jury on

self-defense as to the burglary charge. Under RCW 9A.52.020(1), "[a] person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person." Wall argued his theory of self-defense could negate either the element of being armed with a deadly weapon or assaulting any person.

Wall relies on the following testimony from Caratachea to argue Wall was acting in self-defense:

> I know that [Wall] told me he did something and like <u>in defense</u> of what had happened. . . . I guess he attacked them, and, um, at some point he realized where, like how far it had gotten, and I guess he stopped at that point and then he just ran off he said. . . . I know that apparently he had used his box cutter, but I don't remember if it was him telling me that or whatever. I don't remember exactly what, how he had described it. . . . [Heim] had just gotten in the way, and he understood why [Heim] had pushed him or hit him or whatever he had done because, you know, he had seen him push [Lizotte] and it was apparently a pretty hard push like a huge shove, and I guess she went flying into a wall or something like that, so it wasn't like delicate, and then that's when [Heim] jumped in. So he said he felt bad about what happened to [Heim], but I guess he just kind of got in the way.[1]

Additionally, Wall relied on evidence that Heim often carried a knife and had one in his pants pocket in Lizotte's bedroom, to support his self-defense claim.

Self-defense can be a defense to the assault predicate of burglary. Here, the trial court concluded that Wall was entitled to a self-defense instruction for the assault charges, but concluded as a matter of law, that the same evidence did not warrant a self-defense instruction for the assault predicate of burglary. Wall relied on identical

---

[1] (Emphasis added.)

-9-

evidence to argue both theories of self-defense. Once the trial court gave the self-defense instruction for assault, it was an error not to extend the instruction to the assault predicate of burglary.

The trial court's error, however, was harmless. "An error affecting a defendant's self-defense claim is constitutional in nature." State v. Arth, 121 Wn. App. 205, 213, 87 P.3d 1206 (2004). Under the constitutional error analysis, an error in jury instructions is harmless if within the entire context of the record, it is harmless beyond a reasonable doubt. State v. Grimes, 165 Wn. App. 172, 187, P.3d 454 (2011). The trial court instructed the jury on self-defense as applied to the assault charges, and the jury found that the State proved beyond a reasonable doubt that Wall was not acting in self-defense. Wall relied on the same evidence for both theories of self-defense. Therefore, even if the trial court had instructed the jury on self-defense as to the burglary charge, Wall cannot establish the jury verdict would have been any different.

We affirm.

_Mann, A.C.J._

WE CONCUR:

_Andrus, J._

-10-