**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| JESSICA LILLIAN RUGLAND, | No. 83630-7-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| LIAM STEERS, | |
| Respondent. | |

MANN, J. — JLR appeals the trial court's denial of a sexual assault

protection order (SAPO) under former ch. 7.90 RCW.[1]  JLR argues that the trial

court erred by failing to follow the evidentiary requirements of RCW 7.90.080 and

ER 412 before considering evidence of prior sexual encounters between JLR and

LS.  We agree.  We reverse and remand for a new hearing consistent with ch.

7.105 RCW and ER 412.

<u>FACTS</u>

On September 7, 2021, JLR, then 14, petitioned for a temporary SAPO in the

King County Superior Court.[2]  The petition alleged that JLR was sexually assaulted a

---

[1] Ch. 7.90 RCW was repealed by Laws of 2021, ch. 215, § 170, effective July 1, 2022.  Civil protection orders, including SAPOs are now governed by ch. 7.105 RCW.  Because this matter was considered under former ch. 7.90 RCW, citations will be to the former statute.
[2] The petition was filed by JLR's mother.  Former RCW 7.90.030(1)(b)(i) allowed for an adult to petition for a SAPO on behalf of a minor child.

year and a half earlier by LS.  A superior court commissioner granted the temporary

SAPO that same day and set a hearing for 14 days later.  The temporary SAPO

restrained LS from contact with JLR and excluded him from her residence and school.

The day before the scheduled SAPO hearing, JLR amended her petition to

explain,

> the incident took place in October 2019 when [JLR] was 12 yrs old and
> [LS] was 14 yrs old in Schmitz Park Forest in West Seattle.  She told me
> the two had been friends at the time.  [LS] asked her repeatedly to have
> sex with him.  She told him no repeatedly.  After multiple times telling him
> no, he pulled his pants down and exposed himself to her.  He then
> pressured her to give him oral sex.  She said no.

That same day, LS filed a declaration stating that he and JLR had consensual

oral sex in the woods "a few times," and then had consensual sexual intercourse

beginning in November 2019 at his house.  Because LS was represented by counsel,

the trial court appointed counsel for JLR consistent with former RCW 7.90.070.  The

court also extended the temporary SAPO with a new hearing date 14 days later.

On October 3, 2021, JLR filed a declaration explaining in more detail her

encounter with LS in Schmitz Park in October 2019.  The declaration reflected her

amended SAPO petition, including telling LS "no" to sex, and the eventual oral sex

incident.  JLR also explained that she only rarely saw LS after that, until just before filing

the SAPO petition.

> I would see [LS] at school after this and I saw him at Safeway once.  I tried
> to minimize what happened in my mind and just tried to forget.  I never
> planned to do anything about it and I just wanted to pretend it never
> happened.  The next school year was remote learning so I didn't see [LS].
> When I went back to school this year, I saw [LS] in one of my classes and
> it all just came back and hit me.  I felt numb and cold and my heart was
> racing.  I told my teacher I needed to leave the class.  I told my teacher

[LS] sexually assaulted me and the vice principal ended up calling the police.

The next day LS filed a declaration in response in which he explained his version of the encounter in Schmitz Park. LS explained:

During the encounter, I did ask her if she wanted to have sex and after she said no, due to the area we were in, she offered to give me oral sex. After I heard someone coming I ended it and I had mentioned I had blue balls, however I never said it was her fault or indicated such. I then asked her to turn around so I could relieve myself without her watching because I was in pain. I never forced anything.

LS also explained that he and JLR continued to see each other: "[a]fter the encounter we will saw each other and later had planned sex."

On October 5, 2021, the trial court reissued the temporary SAPO and scheduled a new hearing for October 19, 2021. The court asked the parties to submit briefing addressing LS's request to have JLR testify.

Counsel for LS filed a brief containing a statement of evidence offered for an in-camera review, including an explanation of the October 2019 encounter in Schmitz Park along with statements that LS and JLR had engaged in multiple sexual encounters later. The filing included a new declaration from LS amending his previous declaration to reflect that consensual oral sex took place between the two more than once at his house and in the woods. Counsel for LS sought live testimony from both LS and JLR.

After the temporary SAPO and scheduled hearing were extended by agreement, the matter came before a pro tem superior court commissioner on November 16, 2021. The hearing was conducted over Zoom. As the hearing began, the commissioner began to swear in witnesses. JLR's counsel interjected and reminded the court of the prior briefing and JLR asked that the matter be considered on the briefing and that LS's

counsel wanted an in-camera hearing on evidence of prior sexual behavior. The commissioner explained that "I can tell you that we're not going to have an in camera hearing" and that the courtroom was empty except for the lower bench. The commissioner also explained that "I can tell you that prior sexual history, I will determine what weight to give it but I'm not really interested primarily in that. What I'm interested in is what happened on this particular occasion."

LS then testified.[3] After he explained to the court his interpretation of the sexual encounter, the commissioner followed up by asking about other sexual encounters between JLR and LS:

[Court]: All right. And was this the—how many times before this had you and she gone further than kissing and maybe touching?

[LS]: We had touched before, and I don't know for sure if we had had oral sex before. It's possible that we had done it once in my house, but I can't remember the exact timeline.

[Court]: Okay. Okay. Go ahead. Anything else?

[LS]: But I do know that we had done it once or twice more. Once could have been before this encounter, but definitely once after.

. . . .

[Court]: All right. And not to embarrass anybody, but what exactly happened at your house either before or after this situation in the forest?

[LS]: After the situation in the forest, not much had changed, so we still saw each other a bit, and later we had sexual intercourse.

[Court]: And is that one of the things you're referring to that happened at your house?

[LS]: Yes, yes.

---

[3] JLR did not testify.

[Court]: Okay. And do you—from her actions, did you interpret that this was consensual or nonconsensual?

[LS]: Completely.

[Court]: What's that?

[LS]: Completely consensual.

After hearing argument from counsel, the commissioner denied the full SAPO, explaining:

So number one, just let me state that just the fact a 12-year-old and 14-year-old are engaging in sexual activity—there's been no, I don't think, dispute that there were kissing incidents . . . and touching and that sort of thing. It's just astounding to me that these children are exploring something that is beyond their emotional capabilities, at least in my book.

We have a situation here that the stories are different from each other. [LS] has come forward and admitted, yeah, this is what happened, at least from his perspective. And certainly the petitioner has had a[n] emotional reaction to the entire situation. I just can't imagine—just setting everything aside, I can't imagine how a 12-year-old wouldn't have a really serious reaction to something that they just can't quite handle.

Now, the point is that I have to decide is if it was consensual or not. And certainly there is evidence that she did not consent, and then there is evidence that she did, and I'm supposed to take myself to that forest on that day and decide which of the kids is telling the truth. And, frankly, I think that there are elements of truth in both of the children's testimony.

Boys are way different from girls emotionally, and [LS] just matter of fact indicated what they did and how many times they did it. Now, the petitioner, her testimony is limited to this one occasion. And honestly, I don't think either of them were ready, certainly, to have any kind of sexually—sexual activity to this extent, and the emotional part of it is just what blows my mind. They're suddenly in these bodies that they don't know what to do with, and they are also curious. Unfortunately, it's not always a curiosity. In fact, in my book, it should never be a curiosity that should look for answers in these age groups.

I understand what both kids are saying, and I want to emphasize that, honestly, I don't disbelieve either one of them, completely. I just think that they had very different reactions to a situation that they were in. I just

can't find by a preponderance even that the sexual activity was nonconsensual, and I'm not going to be issuing a full order today.

On November 16, 2021, the court entered its order denying the SAPO. The court later amended the order to include "a preponderance of the evidence has not established that there has been nonconsensual sexual contact or nonconsensual sexual penetration." In the order, the court "strongly suggest[ed] that the West Seattle High School have a mutually agreeable safety plan for the parties."

The trial court denied JLR's motion for reconsideration.

JLR appeals.

## ANALYSIS

JLR argues that the trial court erred as a matter of law in failing to follow the plain language of former RCW 7.90.080 and ER 412, refusing to hold the required in-camera hearing, failing to strike and bar inadmissible evidence, and failing to seal the record. We agree.

A. Standard of Review

In 2006, the Washington State Legislature created the Sexual Assault Protection Order Act (SAPOA), ch. 7.90 RCW, with the intent to create a civil remedy for victims of sexual assault to obtain a protection order against future interactions with their assailant. RCW 7.90.005. Any victim of "nonconsensual sexual conduct or nonconsensual sexual penetration" may file a SAPO petition. RCW 7.90.030(1)(a). After a hearing,

> If the court finds by a preponderance of the evidence that the petitioner has been a victim of nonconsensual sexual conduct or nonconsensual sexual penetration by the respondent, the court shall issue a sexual assault protection order.

RCW 7.90.090(1)(a).

We review the trial court's decision to grant or deny a protection order for abuse of discretion and determine whether the decision is manifestly unreasonable or exercised on untenable grounds. Nelson v. Duvall, 197 Wn. App. 441, 451, 387 P.3d 1158 (2017). "A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts." Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 669, 230 P.3d 583 (2010). We defer to the trial court on the persuasiveness of the evidence, witness credibility, and conflicting testimony, however, we review questions of law de novo. Nelson, 197 Wn. App. at 451.

B. RCW 7.90.080

RCW 7.90.080 defines the type of evidence admissible in a SAPO proceeding and the how the evidence may be introduced. In general, evidence of "prior sexual activity or the reputation of the petitioner is inadmissible" with two exceptions:

> (a) As evidence concerning the past sexual conduct of the petitioner with the respondent when this evidence is offered by the respondent upon the issue of whether the petitioner consented to the sexual conduct with respect to which the offense is alleged; or
>
> (b) When constitutionally required to be admitted.

RCW 7.90.080(1).

When evidence of prior sexual activity or reputation of the petitioner is admissible, its introduction is controlled by RCW 7.90.080(2), which requires the trial court to make to make multiple findings prior to its admission:

> No evidence admissible under this section may be introduced unless ruled admissible by the court after an offer of proof has been made at a hearing held in camera to determine whether the respondent has evidence to impeach the witness in the event that prior sexual activity with the

respondent is denied.  The offer of proof shall include reasonably specific information as to the date, time, and place of the past sexual conduct between the petitioner and respondent.  Unless the court finds that reasonably specific information as to date, time, or place, or some combination thereof, has been offered as to prior sexual activity with the respondent, counsel for the respondent shall be ordered to refrain from inquiring into prior sexual activity between the petitioner and the respondent.  The court may not admit evidence under this section unless it determines at the hearing that the evidence is relevant and the probative value of the evidence outweighs the danger of unfair prejudice.  The evidence shall be admissible at trial to the extent an order made by the court specifies the evidence that may be admitted and areas with respect to which the petitioner shall be examined or cross-examined.

The trial court failed to follow the procedures in RCW 7.90.080(2).

First, RCW 7.90.080(2) prohibited the introduction of evidence of prior sexual contact unless first ruled admissible based on an offer of proof "made at a hearing held in camera."  LS filed two declarations testifying about prior sexual encounters with JLR.  The trial court appears to have treated these declarations—not as offers of proof—but as substantive evidence, contrary to the procedure laid out in the statute.

Second, RCW 7.90.080(2) requires that the offer of proof include "reasonably specific information as to date, time, and place" of the past sexual conduct between the parties.  The statute also requires that "[u]nless the court finds that reasonably specific information as to date, time, or place" has been offered, counsel for the respondent "shall be ordered to refrain from inquiring into prior sexual activity between the petitioner and the respondent."

LS's evidence of prior sexual contact with JLR, at least as laid out in the declarations, may not have met the specificity requirement to be admissible as substantive evidence.  His October 8, 2021 declaration, for example, stated that "consensual oral sex took place between the petitioner and I multiple times, both at my

house and the woods, not just the woods as previously stated." Similarly, in response to the trial court's questions, LS testified "We had touched before, and I don't know for sure if we had had oral sex before. It's possible that we had done it once in my house, but I can't remember the exact timeline." Without the requisite evidentiary hearing to determine additional details, the trial court lacked sufficient evidence to conclude that LS's testimony met the required standard of reasonably specific information.

Third, RCW 7.90.080(2) required the trial court to determine at an in-camera hearing, whether the evidence of prior sexual contact is relevant and that the "probative value of the evidence outweighs the danger of unfair prejudice." The trial court failed to make this determination on the record.

In summary, the record does not support that the trial court followed the procedures of RCW 7.90.080 in allowing evidence of past sexual activity between LS and JLR.[4]

C. Read Presumption

LS quotes State v. Read, 147 Wn.2d 238, 245, 53 P.3d 26 (2002), for the proposition that "[i]n bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions." And further that "[t]he admission of . . . irrelevant testimony does not warrant reversing . . . because we presume the trial

---

[4] JLR also argues that the court erred in not following ER 412. ER 412 states that before offering evidence about the victim's sexual behavior, the perpetrator must file a written motion at least 14 days before trial, and serve the motion on all parties and notify the victim or victim's guardian. ER 412(d)(1). And again, like in RCW 7.90, the court may admit such evidence only after it conducts an in-camera hearing when the parties all have a right to be heard. While evidence rules do not generally apply to protection orders, the rape shield statute and ER 412 explicitly apply here. ER 1101(c)(4). In particular, ER 412(d)(2) requires that the "motion, related papers, and the record of the hearing must be sealed and remain under seal unless the court orders otherwise."

judge did not consider inadmissible evidence in rendering the verdict, and the remaining evidence supports [the verdict]." Read, 147 Wn.2d at 244.

But as our Supreme Court has recognized, the "Read presumption" is a "'presumption on appeal that the trial judge, knowing the applicable rules of evidence, will not consider matters which are inadmissible when making his [or her] findings.'" State v. Gower, 179 Wn.2d 851, 855, 321 P.3d 1178 (2014) (quoting State v. Miles, 77 Wn.2d 593, 601, 464 P.2d 723 (1970)). The court elaborated:

> The Read presumption is, therefore, inapplicable when the judge actually "consider[ed] matters which are inadmissible when making his [or her] findings." Thus, "[a] defendant can rebut the presumption by showing the verdict is not supported by sufficient admissible evidence, or the trial court relied on the inadmissible evidence to make essential findings that it otherwise would not have made."

Gower, 179 Wn.2d at 856 (quoting Read, 147 Wn.2d at 245-46).

JLR can rebut the Read presumption. First, the trial court did consider the inadmissible evidence of alleged prior sexual conduct in its oral ruling when it recited LS's sole testimony that there had been "kissing incidents . . . and touching and that sort of thing." The court found this conduct "astounding."[5] And second, while recognizing that JLR limited her testimony to the one incident, the court appeared to accept LS's testimony that he "just matter of fact indicated what they did and how many times they did it." This reflects that the court considered LS's testimony of prior sexual contact.

Purged of evidence of prior sexual conduct, the admissible evidence before the trial court was limited to JLR's explanation of the encounter in Schmitz

---

[5] In addition, under RCW 7.90.090(5)(c), a court may not deny a SAPO based in whole or part on evidence that the petitioner "engaged in limited consensual sexual touching."

Park in her October 3, 2021 declaration, and LS's October 4, 2021 reply declaration admitting that the encounter took place but it was consensual.  Based solely on this testimony, we cannot conclude that without the inadmissible evidence of prior sexual contact that the trial court would have denied the SAPO.

We reverse and remand for a new hearing consistent with ch. 7.105 RCW and ER 412.

_Mann, J._

WE CONCUR:

_Coburn, J._                    _Andrus, C.J._