**FILED**
**JANUARY 23, 2018**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34110-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSHUA A. GATHERER, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Joshua Gatherer appeals his bench trial conviction

for indecent liberties with forcible compulsion. He argues the trial court committed

reversible error when it admitted propensity evidence. He also argues he is entitled to a

new trial because the State introduced improper opinion evidence and committed

prosecutorial misconduct. We disagree and affirm.

FACTS

In August 2014, Mr. Gatherer attended a beach party with a large group of friends

on the Snake River approximately 15 miles south of Asotin, Washington. Rebecca

Williams[1] also attended the party. The attendees drank alcohol from afternoon and into the night. Many of the party-goers stayed in camp tents.

Prior to that night, Ms. Williams and Mr. Gatherer were good friends, and Ms. Williams thought of Mr. Gatherer as an older brother. They had never had a romantic relationship. Once everyone had gone to sleep, Mr. Gatherer began trying to kiss Ms. Williams. Ms. Williams pulled away and protested.

Shortly thereafter, Mr. Gatherer carried Ms. Williams to the beach away from their sleeping friends. Ms. Williams resisted. Mr. Gatherer set her down on a blanket and straddled her pelvis. He attempted to kiss her while pulling her hair. Mr. Gatherer then pulled up her shirt and swimsuit top and kissed her breasts. Ms. Williams continued to tell him no and told him to stop. He then put his hand down her shorts over her swimsuit rubbing her vaginal area. When he attempted to put his hand inside her swimsuit, she threatened to scream if he did not stop. He then stood up and held his hands up. None of their friends heard or saw what happened.

*The confrontation call*

At trial, the State offered in evidence a recorded telephone call between Mr. Gatherer and his ex-girlfriend, Gina Thompson. Ms. Thompson, an Idaho resident, had

---

[1] We use pseudonyms throughout this opinion to refer to victims and alleged victims of sexual assaults.

2

gone to Idaho authorities and complained that Mr. Gatherer had raped her during their relationship. Detective Nicholas Eylar of the Lewiston, Idaho Police Department, employed a technique lawful in Idaho. The technique, known as a "confrontation call," involved recording an alleged victim's call to the alleged perpetrator. The purpose of a confrontation call is to corroborate the victim's accusations and to invoke admissions by the alleged perpetrator.

As a pretext for the call, Ms. Thompson compared Ms. Williams's recent accusations against Mr. Gatherer to what Mr. Gatherer had supposedly done to her. In response to the accusation that he assaulted Ms. Williams, Mr. Gatherer admitted what he did to Ms. Williams was "'horrible'" and apologized for it. Clerk's Papers (CP) at 18. Ms. Thompson stated that she believed he would have raped Ms. Williams if nobody was around, and when she asked if this was true, he responded, "I don't know." Verbatim Report of Proceedings (June 15, 2015, Nov. 16, 2015, Dec. 7, 9, 10, and 14, 2015, Feb. 16, 2016) (VRP) at 238.

*Denial of Mr. Gatherer's pretrial motion*

The State charged Mr. Gatherer with indecent liberties with forcible compulsion. Mr. Gatherer brought a motion to exclude the confrontation call. He argued that the evidence was improper propensity evidence. The State responded that it would not be offering Ms. Thompson's statements during the call to prove the truth of Ms. Thompson's

3

allegation of rape. Rather, her statements would give context to the statements made by Mr. Gatherer during the call. The State explained, "[s]o we're not offering it for—as evidence of propensity or evidence that he acted in conformity with prior incidents of misconduct." VRP at 20-21. The State emphasized that the trial was to the bench and that the trial judge would be "fully capable of parsing out the probative value and the proper purposes for which that information might be offered from the prejudicial impact and any improper purposes for which the court is forbidden from using it." VRP at 21. The trial court denied Mr. Gatherer's motion and ruled that the recording was admissible.

*Trial questions and testimonies alleged to be improper*

During trial, the State called Detective Jackie Nichols of the Asotin County Sheriff's Office. The State asked Detective Nichols to describe the training she received in discerning signs of deceptiveness of interviewees. Detective Nichols described her training. The State then asked Detective Nichols to describe whether she saw signs of deceptiveness when she interviewed Ms. Williams. Detective Nichols said that she saw no signs that Ms. Williams was being deceptive during the interview.

The State asked similar questions regarding deception about Detective Nichols's interview with Mr. Gatherer. Detective Nichols testified to multiple signs tending to corroborate her conclusion that Mr. Gatherer was being deceptive.

4

Defense counsel did not object to most of these questions, except responses where Detective Nichols was describing her conclusions of truthfulness or untruthfulness. The trial court sustained one of defense counsel's objections and noted that Detective Nichols could not comment on the "ultimate veracity of any statement," but that she could "testify what you observed and your impression." VRP at 55.

The State also called Detective Eylar. The State similarly asked Detective Eylar about his training in discerning signs of deceptiveness of interviewees. Detective Eylar testified about his training. The State then asked Detective Eylar whether he saw any signs of deceptiveness when he interviewed Mr. Gatherer. Without objection, Detective Eylar testified that he noticed Mr. Gatherer's demeanor change when he played the confrontation call and that Mr. Gatherer asked to take his coat off. During redirect, the State asked Detective Eylar whether he had noticed that Mr. Gatherer took off his coat during trial after hearing the confrontation call. Detective Eylar responded that he noticed that Mr. Gatherer was wearing a coat at trial, that he did not see when Mr. Gatherer removed his coat, but noticed "it's off now." VRP at 255.

*Basis for the trial court's verdict*

The trial court heard closing arguments and considered the evidence. The case involved a credibility determination between two witnesses, the only witnesses to the

5

No. 34110-1-III
*State v. Gatherer*

alleged crime. The trial court explained why it found Ms. Williams more credible than

Mr. Gatherer:

> The Court finds [Rebecca Williams's] testimony to be credible concerning these events. Her statements concerning these events have been consistent throughout. There is no indication from the evidence of any motivation on Ms. [Williams's] part to fabricate the events she related. On the other hand, the Defendant's version of events has varied. He has reported that he lacked any first hand memory due to intoxication . . ., claimed that he had kissed Ms. [Williams] but stopped when she said "no," and characterized his behavior as "horrible" during the call with Ms. [Thompson].

CP at 19.

The trial court found Mr. Gatherer guilty of the charged crime and later entered a

judgment of conviction and sentenced him. Mr. Gatherer timely appealed.

## ANALYSIS

### A.    No Error Admitting Confrontation Call

Mr. Gatherer claims that the trial court violated ER 404(b) in admitting portions of

the confrontation call without weighing, on the record, the probative value of the

evidence against its prejudicial effect. We disagree.

ER 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

6

Whether a trial court erred in admitting evidence in violation of ER 404(b) is reviewed for an abuse of discretion. *State v. Yarbrough*, 151 Wn. App. 66, 81, 210 P.3d 1029 (2009). When a court admits prior bad acts under ER 404(b), it must (1) determine the purpose for which the evidence is offered, (2) determine the relevance of the evidence, and (3) balance on the record the probative value of the evidence against its prejudicial effect. *State v. Campbell*, 78 Wn. App. 813, 821, 901 P.2d 1050 (1995).

On appeal from a bench trial, the appellate court presumes that the trial judge only considered proper and admissible evidence. *State v. Read*, 106 Wn. App. 138, 145, 22 P.3d 300 (2001) (quoting *State v. Read*, 100 Wn. App. 776, 788, 998 P.2d 897 (2000)), *aff'd*, 147 Wn.2d 238, 53 P.3d 26 (2002). A defendant rebuts the "presumption by showing the verdict is not supported by sufficient admissible evidence, or the trial court relied on the inadmissible evidence to make essential findings that it otherwise would not have made." *Read*, 147 Wn.2d at 245-46.

Here, the trial court did not err when it admitted the confrontation call without weighing the probative value of the evidence against its prejudicial effect. This is because the trial court did not consider Mr. Gatherer's "other crimes, wrongs, or acts." It is true that the trial court included a detailed description of the confrontation call in one of its findings. But read as a whole, it is clear that the trial court did not consider Ms. Thompson's accusations against Mr. Gatherer in rendering its verdict. The trial court's

7

basis for finding Mr. Gatherer guilty was not that Mr. Gatherer had done similar things in the past or that he was a bad person. Instead, the trial court focused on the consistency of Ms. Williams's description of the incident and the inconsistency of Mr. Gatherer's story. In its findings, the trial court noted that Mr. Gatherer told a third story during the confrontation call. Mr. Gatherer's third story was his admission during the confrontation call that what he did to Ms. Williams was "'horrible,'" and that he apologized. CP at 19.

Had the trial been to a jury, we would not be able to discern that the verdict was based on proper evidence. In a jury trial, the State would have been required to omit many portions of the confrontation call. But when a case is tried to the bench, we presume the trial court considered the evidence only for the proper purpose, such as in this case, only as context for the call. The trial court's explanation for its verdict, an explanation why it believed Ms. Williams instead of Mr. Gatherer, supports this presumption.

We conclude the trial court did not abuse its discretion because it did not consider "other crimes, wrongs, or acts" discussed during that confrontation call.

B.     NO REVERSIBLE ERROR CAUSED BY IMPROPER WITNESS OPINIONS AND ARGUABLE PROSECUTORIAL MISCONDUCT

Mr. Gatherer claims he is entitled to a new trial because Detectives Nichols and Eylar provided improper opinion testimony about his lack of credibility and Ms.

8

Williams's credibility. Mr. Gatherer also claims the prosecutor committed misconduct by eliciting such testimony. We agree with Mr. Gatherer that the detectives' opinions were improper and that the prosecutor improperly elicited such testimony. But we deny Mr. Gatherer's request for a new trial because there is no evidence that the improper opinions or the prosecutor's conduct prejudiced him.

We review whether a trial court improperly admitted witness testimony for an abuse of discretion. *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001). A trial court abuses its discretion only if no reasonable person would adopt the view espoused by the trial court. *Id.* If a party fails to preserve an issue with an objection below, this court generally declines to address the issue. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983); *see also* RAP 2.5(a).

At trial, defense counsel did not object to Detective Nichols describing her training in recognizing deception or in her description of Ms. Williams's and Mr. Gatherer's verbal and nonverbal cues that supported her implied opinions. Nor did defense counsel object to Detective Eylar's testimony describing his training and his testimony that Mr. Gatherer showed signs of deception.

But even if a defendant fails to preserve an issue below, he or she may raise an issue for the first time on appeal if the trial court error is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). Manifest error requires a plausible showing that the

9

error had practical and identifiable consequences at trial. *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). "Admission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a 'manifest' constitutional error." *Id.* at 936. For opinion testimony not objected to by defense counsel to constitute manifest error, a witness must make an explicit or nearly explicit statement on the defendant's guilt. *Id.* at 936-37. A nearly explicit statement that the witness believed the accusing victim will constitute manifest error. *Id.* at 936.

In *State v. Barr*, 123 Wn. App. 373, 98 P.3d 518 (2004), the court addressed police opinion testimony similar to the testimony that occurred here. There, the defendant was charged with rape and the credibility of the defendant and the victim were crucial to the State's case. *Id.* at 381. The State elicited the testimony of an officer who interviewed the defendant about the alleged crime. *Id.* at 378. The officer testified that he had been trained to use the Reid Investigation Technique, a technique that discerns deceptiveness based on verbal and nonverbal cues. *Id.* The technique has never been accepted as admissible in this state. *Id.* at 380. The officer testified about the verbal and nonverbal cues given by the defendant during the interview. *Id.* at 379-80. Based on these cues, the officer strongly implied that the defendant was not being truthful. *Id.* at 382. The *Barr* court held that the officer's opinions constituted manifest constitutional error that was not harmless and reversed the defendant's conviction. *Id.* at 384.

10

What *Barr* teaches is that an officer cannot testify about his or her training in signs of deceptiveness. This training has no more basis in science than lie detector tests. Although the Reid Technique and lie detector tests have some validity, they are too subjective and a jury is prone to place too much weight on them. No Washington court has held that the Reid Technique is admissible. The State has not argued that the Reid Technique should be admissible. Nevertheless, any witness can testify about his or her observations of an alleged victim or an alleged perpetrator.

Here, the prosecutor went too far when he asked both detectives to testify about their training and elicited testimony that strongly suggested that Ms. Williams was truthful whereas Mr. Gatherer was deceptive.

In *Barr*, the case was tried to a jury, whereas here the case was tried to the bench. When the trial court sits as the trier of fact, it is presumed not to have considered inadmissible lay opinions. *Read*, 106 Wn. App. at 145 (quoting *Read*, 100 Wn. App. at 788). Had Detective Nichols's and Detective Eylar's testimonies been presented to a jury, their testimonies would have invaded the province of the jury and violated Mr. Gatherer's right to trial by an impartial jury. *See Barr*, 123 Wn. App. at 380. However, because Mr. Gatherer's case was tried to the bench, we presume that the judge only considered admissible evidence. In reviewing the trial court's findings of fact, it is clear that the trial court did not consider the detectives' improper opinions.

11

Mr. Gatherer also contends that eliciting the detectives' improper opinions constitutes prosecutorial misconduct. To prove prosecutorial misconduct, a defendant must show that the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

When the defendant fails to object to the prosecutor's conduct at trial, it will only constitute prosecutorial misconduct if the remark is "so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *State v. Stenson*, 132 Wn.2d 668, 726-27, 940 P.2d 1239 (1997). Under this heightened standard, the defendant must show (1) that no curative instruction would have obviated any prejudicial effect, and (2) the conduct resulted in prejudice that had a substantial likelihood of affecting the outcome of the case. *Emery*, 174 Wn.2d at 761. The presumption that a trial court judge sitting as trier of fact will consider only admissible evidence still applies. *See Read*, 106 Wn. App. at 145 (quoting *Read*, 100 Wn. App. at 788).

Assuming without deciding that the prosecutor's conduct was improper under the heightened standard applicable when no objection is made at trial, we confidently conclude that the conduct was not prejudicial. The trial court's findings do not mention the detectives' opinions that Ms. Williams was credible, or that Mr. Gatherer was

12

deceptive. Instead, the trial court's basis for discerning credibility was based on the fact that Ms. Williams's story never changed, whereas Mr. Gatherer had three stories.

We conclude that the detectives' improper opinion evidence had no practical and identifiable consequences at trial and that the prosecutor's conduct was not prejudicial.

## C. PROSECUTOR'S COMMENT ON DEFENDANT TAKING OFF HIS COAT DURING TRIAL

Mr. Gatherer claims he is entitled to a new trial because the prosecutor committed misconduct by commenting that he took off his coat after the confrontation call was played in court. We agree with Mr. Gatherer that it is generally improper for a prosecutor to comment on a defendant's courtroom demeanor. *See State v. Barry*, 183 Wn.2d 297, 305 n.4, 352 P.3d 161 (2015); *State v. Klok*, 99 Wn. App. 81, 85, 992 P.2d 1039 (2000). But we disagree that the prosecutor's improper comment entitles Mr. Gatherer to a new trial.

Again, because Mr. Gatherer failed to object to the alleged misconduct, he must show that the comment was "so flagrant and ill-intentioned that it evince[d] an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *See Stenson*, 132 Wn.2d at 726-27.

There is no evidence that the trial court's verdict was tainted by the prosecutor's improper comment. The trial court's findings of fact show that the trial court did not give

13

the prosecutor's comment any significance. Instead, the trial court's verdict was based on appropriate evidence. It found that Ms. Williams was credible based on the consistency of her statements, whereas Mr. Gatherer was not credible based on the inconsistencies of his statements, including his admission that what he did to Ms. Williams was horrible.

We conclude that the prosecutor's comment about Mr. Gatherer taking off his coat during trial was improper, but not prejudicial and does not require a new trial.

D.    CUMULATIVE ERROR

Mr. Gatherer claims that cumulative errors require him to receive a new trial. We disagree.

Reversal may be required due to the cumulative effects of errors even if each error examined on its own would otherwise be considered harmless. *State v. Russell*, 125 Wn.2d 24, 93, 882 P.2d 747 (1994). The reviewing court may review the claim of cumulative error even when the individual errors were not preserved if the alleged cumulative errors satisfy RAP 2.5(a)(3). *State v. Alexander*, 64 Wn. App. 147, 150-51, 822 P.2d 1250 (1992).

Here, the trial court did not abuse its discretion by admitting the confrontation call. The recording was admitted to offer inconsistencies in Mr. Gatherer's story and to assist the trial judge in determining the credibility of Ms. Williams and Mr. Gatherer. Next, as borne out by the trial court's findings of fact, the opinion testimonies of the detectives and

14

No. 34110-1-III
*State v. Gatherer*

the prosecutor's conduct in eliciting the opinions had no discernable effect on the verdict. Finally, the prosecutor's comment about Mr. Gatherer taking off his coat during trial had no discernable effect on the verdict either.

Our conclusions are based on the trial court's written findings of fact that show us what evidence the trial court relied on in reaching its verdict. Had this case been presented to a jury, we would not be so confident that the trier of fact based its decision only on proper evidence.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____         _____
Korsmo, J.                                                      Pennell, J.

15