**FILED**
**MARCH 2, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 38293-1-III |
| | ) | |
| REBECCA BIES, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| ALEXANDER BIES, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Alexander Bies appeals from a final divorce decree, challenging the parenting plan and property distribution. After completion of briefing, the respondent, Rebecca Wolfe (formerly known as Rebecca Bies) filed for bankruptcy, thereby triggering an automatic stay of proceedings. 11 U.S.C. § 362(a). With the agreement of the parties, this court subsequently bifurcated the issues on appeal so as not to delay review of assignments of error related to the parenting plan. *See* Order Re: Bifurcation, *In re Marriage of Bies*, No. 38293-1-III, at 2-3 (Wash. Ct. App. Feb. 8, 2023); *see also* 11 U.S.C. § 362(b)(2)(A)(iii) (issues "concerning child custody" exempted from automatic stay).

For the reasons set forth in this decision, we remand to the trial court for reconsideration and clarification of the parenting plan. We retain jurisdiction over the

remaining issues on appeal so that they may be resolved upon the conclusion of the bankruptcy proceedings.

## FACTS

Alexander Bies and Rebecca Wolfe married in 2013 and have two children. Ms. Wolfe petitioned for dissolution in 2019 and the case proceeded to trial in May 2021. At the time of trial, the parties' children were ages six and four.

A primary focus at trial was Dr. Bies's mental state and parenting abilities. Dr. Bies has had lifelong mental health struggles, and has been diagnosed with depression and posttraumatic stress disorder. At times, he has suffered from suicidal ideation. According to Ms. Wolfe, Dr. Bies's mental health impairments negatively impact his relationship with their children. She claims Dr. Bies has a history of fleeing stressful situations, and yelling and cursing at the children. In March 2019, in a failed effort to restrain his older child, Dr. Bies grabbed the child's neck with his hands. The incident was investigated by Child Protective Services (CPS), but did not result in any adverse action.

Dr. Bies testified at trial and addressed the March 2019 incident. According to Dr. Bies, on the day in question he was sitting down watching basketball and having a beer while also watching the children. The youngest child was asleep and Ms. Wolfe was

2

taking a shower. The oldest child wanted to play, but Dr. Bies felt as though he could not do so because he had recently injured his back. The child became upset and started shrieking. Dr. Bies chased the child to try to get her to stop. Dr. Bies claimed he reached down to grab the child's shoulder and his back spasmed. Dr. Bies then ended up grabbing the child's neck and squeezing. Dr. Bies then sent the child upstairs to tell Ms. Wolfe what happened. Dr. Bies left the home to cool off. He also sent a text message to Ms. Wolfe expressing shame and guilt over the incident. In his testimony, Dr. Bies acknowledged the episode as his fault. He also testified that, while he did have a back spasm, he understood blaming the incident entirely on his back would improperly minimize his responsibility.

In addition to his own testimony, Dr. Bies presented testimony from two psychologists: Dr. John Fishburne, his treating psychologist, and Dr. Jameson Lontz, who had evaluated Dr. Bies's mental health based on a record review, testing, and several examinations. The psychologists testified that Dr. Bies's mental health had improved markedly and that Dr. Bies had demonstrated improvement in his coping mechanisms and parenting skills. Dr. Lontz testified that he had "no concern" about Dr. Bies's parental capacity, and that Dr. Bies posed a "low to moderate" risk of engaging in future aggressive acts. 1 Rep. of Proc. (RP) (May 11, 2021) at 270, 279. Dr. Fishburne testified

that he had no concerns about Dr. Bies's parental capacity and that he posed no danger to his children. Evidence was presented indicating Dr. Bies had completed several anger management and parenting classes.

After trial, the court largely adopted Ms. Wolfe's proposed parenting plan, naming Ms. Wolfe the primary residential parent and affording Dr. Bies residential time with the children that included three overnight stays every other week. The trial court rejected Ms. Wolfe's request for a final say on major decisions about the children, instead ordering joint decisionmaking. The court also placed limitations on Dr. Bies, finding he had grabbed his older child's neck "in a choking fashion." Clerk's Papers (CP) at 126. The court also found Dr. Bies has an emotional impairment that impedes his parenting ability. The court ordered Dr. Bies to report on his mental health treatment to Ms. Wolfe quarterly for at least three years. The court also forbade Dr. Bies from drinking alcohol while the children were in his care.

In its written findings and conclusions, as well as the final divorce order, the court included a factual finding justifying its restrictions on Dr. Bies:

> The Court finds that [Dr.] Bies has failed to engage in treatment for his mental health; therefore, the Court enters restrictions pursuant to RCW 26.09.191, finding that Dr. Bies has a long-term emotional problem that interferes with his ongoing ability to parent.

*Id.* at 151, 156.

4

Dr. Bies appeals.

ANALYSIS

The issue to be resolved in this bifurcated appeal is the propriety of the trial court's

parenting plan. Apart from specific errors assigned to the parenting plan, Dr. Bies alleges

the trial court committed generalized evidentiary errors and violated the appearance of

fairness doctrine. Because the evidentiary issues and appearance of fairness claim

potentially impact the parenting plan, we address all three concerns.

## 1. Parenting plan

Dr. Bies challenges the trial court's parenting plan. We review the trial court's

findings for substantial evidence. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242,

170 P.3d 572 (2007). If findings are adequately supported, the trial court's decision is

ultimately reviewed for abuse of discretion. *In re Marriage of Landry*, 103 Wn.2d 807,

809, 699 P.2d 214 (1985).

### a. Factual findings

Dr. Bies challenges two of the trial court's factual findings. First, he challenges the

trial court's written finding that he "failed to engage in treatment for his mental health."

CP at 151, 156. Second, he challenges the trial court's finding that he "put his hands

around [his child's] throat in a choking fashion." *Id.* at 126. We address each of the findings in turn.

### *i. Failure to engage in treatment*

We agree with Dr. Bies that the court's finding regarding failure to engage in treatment is not supported by substantial evidence. It was uncontested at trial that Dr. Bies had been receiving mental health treatment from Dr. Fishburne over the course of multiple years. There was also uncontested evidence that Dr. Bies had participated in parenting and anger management classes. The trial court's broad statement that Dr. Bies had not engaged in treatment simply cannot be sustained.

We recognize the trial court may not have intended its written finding to be read quite so broadly. The court's oral comments in announcing its ruling two weeks after the conclusion of trial indicate it understood Dr. Bies had participated in treatment, but the court nonetheless believed he had not made appreciable progress. For example, in its oral ruling, the judge opined that "really, I have Dr. Bies *not realistically* getting any help for his mental health challenges, or at least *very limited help*." 2 RP (May 27, 2021) at 828 (emphasis added). While a court's oral ruling cannot be used to impeach a contrary written ruling, oral comments can be helpful in interpreting or clarifying written findings. *See Sweeten v. Kauzlarich*, 38 Wn. App. 163, 169, 684 P.2d 789 (1984).

But regardless of how we read the trial court's ruling, all the competent evidence at trial indicated Dr. Bies had made satisfactory progress in treatment. Dr. Lontz testified that, in his expert opinion, he was encouraged by Dr. Bies's progress. He testified that Dr. Bies was "demonstrably integrating what he's learning in personal counseling as well as parenting and anger management courses." 1 RP (May 11, 2021) at 278. Dr. Fishburne testified that Dr. Bies "has been very invested in therapy," "made excellent progress," and that there was "no doubt of [Dr. Bies's] sincerity." *Id*. at 364-65.

The only witness to express doubts about Dr. Bies's progress in therapy was Ms. Wolfe. When asked about Dr. Bies's treatment and his purported progress, Ms. Wolfe testified, "I can't trust him based on everything I've seen." 2 RP (May 13, 2021) at 700. While the trial court was permitted to find Ms. Wolfe more credible than Dr. Lontz or Dr. Fishburne, Ms. Wolfe was not qualified as an expert in mental health treatment. Nor is it apparent that she had personal knowledge of Dr. Bies's treatment. It therefore would have been "manifestly unreasonable for the trial court to adopt [Ms. Wolfe's] assessment of [Dr. Bies's] mental health over that of the qualified experts." *In re Marriage of Leaver*, 20 Wn. App. 2d 228, 240, 499 P.3d 222 (2021).

### ii. Choking

We also agree with Dr. Bies's argument that the evidence at trial did not support

using the word "choking" to describe the March 2019 incident between Dr. Bies and his older child. None of the witnesses at trial used the word "choke" or "choking" when describing Dr. Bies's conduct. Ms. Wolfe referred to Dr. Bies's actions as a "throat squeezing incident," and testified that she neither viewed the incident as a "criminal" act nor was she the individual who reported it to CPS. 1 RP (May 11, 2021) at 416; 2 RP (May 13, 2021) at 697. The concept of "choking" came entirely from Ms. Wolfe's attorney. A counsel's argumentative assertions do not constitute evidence. *State v. Frost*, 160 Wn.2d 765, 782, 161 P.3d 361 (2007).

"Choking" refers to an intentional obstruction of someone's breathing. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 396 (1993) (defining "choke" as "to make normal breathing difficult or impossible . . . by compressing the throat with strong external pressure"). A person does not necessarily "choke" someone by squeezing the other person's neck. A parent could clumsily and inappropriately grab their child by the neck in an effort to restrain the child without necessarily seeking to obstruct the child's breathing.[1]

---

[1] We do not mean to excuse or minimize Dr. Bies's behavior; the record indicates that the incident was distressing for the child. We merely point out that the trial court's written finding—that Dr. Bies grabbed his child's neck "in a choking fashion"—is not supported by substantial evidence where no witness described the incident that way.

### b. Restrictions under RCW 26.09.191

The trial court issued restrictions pursuant to former RCW 26.09.191 (2000) requiring Dr. Bies to comply with mental health treatment and provide quarterly progress reports to Ms. Wolfe. The court also ordered Dr. Bies to refrain from alcohol consumption while caring for his children. The court's orders indicate that the RCW 26.09.191 restrictions were based, at least in part, on findings that Dr. Bies "failed to engage" in mental health treatment and grabbed his child "in a choking fashion." CP at 126, 151. Because those findings are not supported by substantial evidence, the court's imposition of restrictions must also be reversed.

Apart from the inadequate findings, the trial court's imposition of RCW 26.09.191 restrictions was also flawed due to an internal inconsistency. Specifically, the court entered its "choking" finding in the portion of the parenting plan labeled "[a]bandonment, neglect, child abuse, domestic violence, assault, or sex offense." CP at 126. Yet the court also ordered joint decisionmaking and dispute resolution with a family law mediator to resolve parenting plan disagreements. But such procedures are statutorily forbidden if a court makes a finding of abuse. *See* RCW 26.09.191(1)(b); *see also* RCW 26.09.187(1), (2)(b)(i). Remand is necessary so that the court may harmonize its findings and orders with the applicable statutes.

### c. Residential time

Dr. Bies challenges the trial court's allocation of residential time and designation of primary residential parent. Dr. Bies claims the trial court failed to make adequate findings pursuant to RCW 26.09.187(3)(a). A trial court is not required to make explicit findings pursuant to all the statutory factors. *In re Marriage of Murray*, 28 Wn. App. 187, 189, 622 P.2d 1288 (1981). However, given our foregoing analysis, it is possible that the trial court's allocation of residential time and designation of primary residential parent were based on the erroneous factual finding that Dr. Bies had failed to address his mental health. We therefore remand for findings pursuant to RCW 26.09.187(3)(a).

## 2. Evidentiary issues

Apart from his criticisms of the trial court's orders, Dr. Bies claims he should be entitled to a new trial based on a series of evidentiary errors. Our assessment of Dr. Bies's complaints is made difficult by the fact that Dr. Bies has not focused on a particular piece of evidence that was admitted or excluded. Instead, Dr. Bies voices his criticisms more generally. According to Dr. Bies, the trial court failed to appropriately consider his motions in limine, improperly instructed counsel to stop making objections, and improperly considered hearsay—which was admitted to explain and contextualize Dr. Lontz's expert opinion—for the improper purpose of the truth of the matters asserted.

A trial court's evidentiary decisions are reviewed for abuse of discretion. *City of Spokane v. Neff*, 152 Wn.2d 85, 91, 93 P.3d 158 (2004). A trial court likewise has wide discretion to regulate the presentation of evidence and argument. *See* ER 611(a); *Sanders v. State*, 169 Wn.2d 827, 851, 240 P.3d 120 (2010). Where, as here, a case is tried to the bench, we presume the court did not consider evidence for an improper purpose. *State v. Read*, 106 Wn. App. 138, 147, 22 P.3d 300 (2001).

Dr. Bies's criticisms of the trial court do not amount to evidentiary error that can be remedied on appeal. While Dr. Bies may not agree with the trial court's style of courtroom management, there is no indication the trial court failed to read and consider Dr. Bies's submissions, precluded counsel from making argument, considered hearsay for improper purposes, or forbade counsel from making evidentiary objections.

Dr. Bies complains that the trial court did not rule on his motions in limine at the commencement of trial, but there is nothing wrong with a trial court deferring ruling on motions in limine and directing counsel to renew objections during the presentation of evidence. *See Fenimore v. Donald M. Drake Constr. Co.*, 87 Wn.2d 85, 92, 549 P.2d 483 (1976). The record shows that is what happened here. The court ruled on Dr. Bies's objections to exhibits as they came up at trial. *See* 1 RP (May 10, 2021) at 13-18, 21-22;

11

*id*. at 100-01, 130 (admitting exhibits 20 and 3). Two of the proposed exhibits referenced in the motions in limine (exhibits 19 and 26) were neither offered nor admitted.

Dr. Bies also alleges that the trial court improperly took judicial notice of information under ER 201. But there is no evidence in the trial court's findings or oral rulings showing it formally took judicial notice of a specific fact.

Dr. Bies's judicial notice argument seems to rest on a claim that the trial court was exposed to inadmissible hearsay during the cross-examination of Dr. Lontz. Specifically, Dr. Bies argues it was improper for Ms. Wolfe's attorney to cross-examine Dr. Lontz about materials in Dr. Bies's medical file that reflected the opinions of nontestifying medical experts.

The argument raised by Dr. Bies is inconsistent with the applicable rules of evidence. Under ER 703, an expert may reasonably rely on facts or data not otherwise admissible in formulating an opinion. An expert who testifies at trial may properly be questioned about the data underlying their opinion. ER 705. The facts and data relied on by the expert are not substantive evidence, but they are relevant to assessing the expert's credibility and the reliability of the expert's opinion. Our Supreme Court has consistently recognized that a psychologist may relate inadmissible hearsay to a fact finder as a means of explaining the underlying bases for their expert opinion. *See In re Det. of Coe*, 175

Wn.2d 482, 512-13, 286 P.3d 29 (2012); *In re Det. of Marshall*, 156 Wn.2d 150, 161-62, 125 P.3d 111 (2005).[2]

A trial court is presumed to understand the rules of evidence and to be capable of considering evidence for one permissible purpose but not for another impermissible purpose. Nothing in the record indicates this presumption should not apply to the trial court's analysis here. Dr. Bies has therefore not demonstrated he is entitled to relief on appeal due to evidentiary error.

*3. Reassignment on remand*

Dr. Bies requests that this matter be reassigned to a different judge on remand. He contends that reassignment will promote the appearance of fairness because the trial was demonstrably biased. We disagree.

In general, a party seeking a new trial judge should petition the trial court itself for recusal. *State v. McEnroe*, 181 Wn.2d 375, 386, 333 P.3d 402 (2014). But the remedy of reassignment is "sometimes" available for the first time on appeal. *Id.* at 387.

---

[2] Dr. Bies relies on *State v. Nation*, 110 Wn. App. 651, 41 P.3d 1204 (2002) in support of his argument, but *Nation* is inapposite. In *Nation*, expert testimony was rejected altogether for lack of foundation. *See id.* at 666. *Nation* did not hold that an expert's credibility cannot be tested on cross-examination through questions directed at the bases for the expert's opinion if the expert relied on facts that are otherwise inadmissible.

Here, we see no basis for reassignment. While we are remanding for additional findings, there is no indication that the trial judge will be unable to follow the terms of our mandate. *See State v. Solis-Diaz*, 187 Wn.2d 535, 540-41, 387 P.3d 703 (2017) (per curiam) (granting reassignment in the unique case where trial court judge had already twice indicated they were not amenable to further consideration of the case with an open mind). Dr. Bies claims the trial judge showed preferential treatment toward counsel for Ms. Wolfe. However, our assessment of the record shows the judge was basically courteous, appropriately detached, and professional. At the end of the trial, the judge addressed both parties and expressed admiration for Dr. Bies and genuine sympathy for his history of mental health struggles:

> I'm very impressed with both of you. I mean, I can't help but be. You just both strike me as very nice people, you know, incredibly educated, very intelligent, very thoughtful. . . .
> Most of the time, I don't get to deal with people that are as nice and courteous and respectful and thoughtful as the two of you.
> . . . .
> Dr. Bies, I'm going to call you doctor because that's what you are, and if I had doctor next to my name, I'd certainly be using that formality all the time. I'm really impressed with you, sir. I really am. Frankly, part of me can't understand how you're able to just sit here and function as a human being given everything you've gone through in your life. You're a pretty young guy too. I'm sort of looking at your curriculum vitae and your history, one would think you're much older given what you've accomplished in life. You're a very accomplished, very intelligent guy.

2 RP (May 27, 2021) at 811, 813.

14

No. 38293-1-III
*In re Marriage of Bies*

ATTORNEY FEES

Dr. Bies has requested attorney fees on appeal. Given the bankruptcy stay, we decline to address this request at this time. The matter of attorney fees can be addressed when we reach the balance of the issues on appeal after the lifting of the stay.

CONCLUSION

This matter is remanded to the trial court for reconsideration and clarification of the parenting plan. Retrial is not required. We retain jurisdiction over the remaining issues on appeal pursuant to the bankruptcy stay. Ms. Wolfe shall notify Dr. Bies and this court no later than 30 days after the lifting of the bankruptcy stay. The court will then assess the need for any further briefing and place the matter on a future docket for consideration.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____        _____
Siddoway, C.J.                          Lawrence-Berrey, J.

15