# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  48909-1-II |
| Respondent, | |
| v. | |
| MICHAEL LEE COOPER, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Michael Lee Cooper appeals his jury trial convictions and sentence for second degree assault of a restaurant patron, third degree assault of an officer, and second degree malicious mischief.  He argues that (1) the trial court erred by not instructing the jury on self-defense related to the second degree assault, (2) a police officer's statements that Cooper wielded a "weapon" were improper opinion testimony, and (3) the trial court erred when it imposed mandatory legal financial obligations (LFOs) without considering RCW 9.94A.777.  He also (4) raises several arguments in a statement of additional grounds (SAG).[1]

We hold that (1) the trial court correctly declined to give self-defense instructions, (2) any improper opinion testimony by the officer was harmless error beyond a reasonable doubt, (3) the trial court should have inquired into Cooper's ability to pay mandatory LFOs in light of evidence of his mental health condition, and (4) Cooper's SAG issues either cannot be considered or fail. Accordingly, we affirm Cooper's convictions and sentence but remand for the trial court to

---

[1] RAP 10.10.

determine whether to impose the deoxyribonucleic acid (DNA) fee and criminal filing fee after considering evidence of Cooper's mental health condition under RCW 9.94A.777.

FACTS

I. BACKGROUND

During an evening in December 2014, Officer John Moses responded to a report of an assault and broken window at a restaurant. A block from the restaurant, Officer Moses came upon Cooper, who was swinging around his head a "metal cane" that resembled a "walking stick" or "collapsible type baton[]." 2 Verbatim Report of Proceedings (RP) at 133.

Deducing that Cooper had perpetrated the assault and broken the window, Officer Moses ordered Cooper to stop. Instead, Cooper began yelling and walking away from Officer Moses more quickly. Officer Moses drew his stun gun and ordered Cooper to drop the stick, which Cooper did and then began reaching into his pockets, throwing garbage to the ground. Officer Moses then ordered Cooper to the ground and despite some resistance, handcuffed Cooper. At one point while Officer Moses was attempting to handcuff Cooper, Cooper grabbed Moses's wrist, forcing Moses to struggle free in order to place handcuffs on Cooper.

Officer Moses then inspected the restaurant where the assault occurred, in which one door had a broken window. He also contacted Brent Nuttall, the restaurant patron whose nose Cooper had broken.

The State charged Cooper with second degree assault of Nuttall, third degree assault of Officer Moses, second degree malicious mischief, and obstructing a law enforcement officer. The second and third degree assault charges included deadly weapon sentencing enhancements.

## II. Pretrial Evidentiary Ruling and Discussion of State's Witnesses

Before trial, Cooper moved to bar Officer Moses from referring to Cooper's cane as a "deadly weapon" on the basis that whether the cane was used as a deadly weapon was "a question of fact for the jury." 2 VRP at 101. The trial court granted his motion.

The prosecutor told Cooper on the first day of trial that the State would not be calling certain witnesses on its witness list. And despite being subpoenaed, one of the State's witnesses, a restaurant employee, did not testify and could not be located. When the State told Cooper's attorney it could not locate the witness, Cooper's attorney at first stated she intended to call that witness. But later in the trial, she decided against calling the witness.

## III. Trial

At Cooper's jury trial, the State presented testimony from Nuttall, a cashier and a cook who were working at the restaurant during the incident, a restaurant manager who was not working during the incident,[2] and Officer Moses. Cooper did not present any testimony or evidence.

### A. Events Inside the Restaurant

1. Nuttall's Testimony

Nuttall testified that on the evening of the assault, he was inside the restaurant, speaking to some acquaintances. At some point, Cooper approached the group. Cooper showed them a folding walking cane, commenting that it could be used as a "potential weapon." 3 VRP at 202. Cooper, who was searching for a bag, then became agitated and began "circling about" inside the restaurant, screaming. 3 VRP at 199. He was holding the cane, which he brandished while he walked. At

---

[2] The manager's testimony related to videos of the incident that he had recorded from surveillance cameras.

3

one point, Cooper approached Nuttall, who feared from Cooper's actions that he would strike Nuttall with the cane. Nuttall described Cooper as "growling" and "angrily engaged" and the restaurant employees as panicked. 3 VRP at 203.

Fearing Cooper would hurt Nuttall or someone else in the restaurant, Nuttall grabbed Cooper by his jacket and forcibly removed him from the restaurant; Nuttall then gave Cooper a strong push away from the restaurant. Nuttall testified that he did not leave the restaurant; instead, he "went back to sit down." 3 VRP at 206. Nuttall then observed Cooper return from the parking lot, "twirling [the cane] around as if to prepare" and reapproaching the restaurant door. 3 VRP at 207. When Nuttall saw Cooper coming back to the restaurant, Nuttall walked to the door, which was open approximately one foot, to stop Cooper from reentering. Cooper and Nuttall arrived at the door simultaneously, and then Cooper swung his cane through the gap and hit Nuttall hard in the face, breaking his nose.

2.    EMPLOYEES' TESTIMONY

A restaurant cashier testified that earlier that evening, she told Cooper,[3] who was causing problems with other customers, to leave the restaurant. When Cooper returned and began yelling, Nuttall told him to leave. Cooper then left; according to the cashier, Nuttall never touched Cooper. Once Cooper was outside, people inside attempted to lock the doors to prevent his reentering. Nuttall went to lock one of the open doors, and in doing so, he was struck with the cane. Cooper then broke a restaurant window and fled.

---

[3] Neither the cashier nor the cook were able to identify Cooper as the man with the cane. However, Nuttall and Officer Moses identified Cooper.

A cook testified that he did not see Nuttall interact with Cooper until Cooper returned to the restaurant. When Cooper came back to the restaurant, he tried to reenter, and Nuttall went to the door while employees called 911. Cooper pushed partway through the front door. Nuttall pushed both on the door and on Cooper to force him out and was struck with the cane.

### 3. OFFICER MOSES'S TESTIMONY

Consistent with the description of his encounter with and arrest of Cooper set forth above, Officer Moses testified about events after Cooper left the restaurant. Officer Moses explained that when he encountered Cooper, "dispatch had already reported that [Cooper] had assaulted somebody inside [the restaurant] and that he had broken a window utilizing the stick, so therefore I know [sic] that it was being *used as a weapon* at the time." 2 VRP at 137 (emphasis added). Officer Moses ordered Cooper to "drop the weapon," referring to the cane, and Cooper complied. 2 VRP at 137. Officer Moses also explained that he was concerned when Cooper reached into his pockets that he would pull out a "second weapon." 2 VRP at 138. The trial court overruled Cooper's objection to Officer Moses's "use of [the] term right now that was subject to a motion." 2 VRP at 141.

### B. SELF-DEFENSE INSTRUCTION RULING

After the State rested, Cooper requested that the trial court instruct the jury on self-defense. The trial court denied the request because under the facts presented, there was no legitimate claim of self-defense where Nuttall was not "doing anything other than to try to keep Mr. Cooper from reentering." 5 VRP at 350.

IV. VERDICT AND SENTENCING

The jury found Cooper guilty of the second degree assault of Nuttall, third degree assault of Officer Moses, and second degree malicious mischief, but not guilty of obstruction of a police officer or any deadly weapon enhancements.

At sentencing, the State discussed Cooper's extensive criminal history, mental health issues, and homelessness at the time of the offense. Cooper also stated that he was on social security because of his mental illness.[4] Before imposing Cooper's sentence, the trial court recognized Cooper's significant mental health issues that contributed to his crime. The trial court sentenced Cooper to 80 months of confinement. It also imposed $800 in mandatory LFOs but did not impose any discretionary LFOs, based upon Cooper's inability to pay. Cooper did not raise any argument that mandatory LFOs should not be imposed under RCW 9.94A.777.

ANALYSIS

I. SELF-DEFENSE

Cooper argues that his right to present a defense was violated when the trial court declined to instruct the jury on self-defense because self-defense was not available under the circumstances. Cooper claims that there was evidence to support that Nuttall was the first aggressor and that Cooper acted in self-defense in the face of Nuttall's allegedly continuing assault. We disagree with these arguments.

---

[4] Before trial, Cooper had also been involuntarily committed.

### A. LEGAL PRINCIPLES

"The standard of review when the trial court has refused to instruct the jury on self-defense depends on why the court refused the instruction," a subjective or objective inquiry by the trial court. *State v. Read*, 147 Wn.2d 238, 243, 53 P.3d 26 (2002). For the subjective inquiry, "[i]f the trial court refused to give a self-defense instruction because it found no evidence supporting the defendant's subjective belief of imminent danger of great bodily harm, an issue of fact, the standard of review is abuse of discretion." *Read*, 147 Wn.2d at 243. For the objective inquiry, "[i]f the trial court refused to give a self-defense instruction because it found no reasonable person in the defendant's shoes would have acted as the defendant acted, an issue of law, the standard of review is de novo." *Read*, 147 Wn.2d at 243. When we determine whether some evidence supported a self-defense instruction, we review the entire record in the light most favorable to the defendant. *State v. Callahan*, 87 Wn. App. 925, 933, 943 P.2d 676 (1997).

There must be "some evidence" of self-defense for a self-defense instruction to be appropriate. *Read*, 147 Wn.2d at 242. The objective inquiry requires a determination of what a reasonable person would have done in the defendant's situation. *Read*, 147 Wn.2d at 243.

### B. NO EVIDENCE THAT COOPER WAS ACTING IN SELF-DEFENSE

Here, Cooper failed to provide any evidence that he had a right to self-defense because under the circumstances, a reasonable person in Cooper's situation would not have acted as Cooper acted. *See Read*, 147 Wn.2d at 243. Although the three witnesses to events inside the restaurant gave somewhat different versions of the encounter, none of their testimony supported that a reasonable person in Cooper's position would have struck Nuttall with the cane. *See Read*, 147 Wn.2d at 243.

Nuttall testified that he only returned to the doorway when he saw Cooper returning and because he sought to stop Cooper from reentering. The cook testified that Cooper came in, started a commotion while looking for his bag, went back outside, started yelling and swinging a cane at people outside, and then returned and came partway through the door. It was then that Nuttall pushed Cooper back outside and in doing so, was struck with the cane. The cashier testified that Cooper left the restaurant, then Nuttall attempted to lock the door, and Cooper struck Nuttall with his cane. All three testified that Nuttall did not leave the restaurant during this encounter.

Under these accounts, Nuttall ejected Cooper from the restaurant but did not follow or give chase to him. Cooper then returned and struck a blow to Nuttall, who was barring his reentry. Given the circumstances, a reasonable person in Cooper's situation would not have struck such a blow. *See Read*, 147 Wn.2d at 243. "[W]hile the threshold burden of production for a self-defense instruction is low, it is not nonexistent." *State v. Janes*, 121 Wn.2d 220, 237, 850 P.2d 495 (1993). Cooper failed to meet this burden.

## C. First Aggressor Argument

Cooper argues that Nuttall, not Cooper, initiated physical contact and was the first aggressor, so that Cooper was acting in self-defense. We reject this argument.

A first aggressor loses the right to act in self-defense. *State v. Dennison*, 115 Wn.2d 609, 617, 801 P.2d 193 (1990). However, if an aggressor in good faith withdraws "'from the combat at such a time and in such a manner as to have clearly apprised his adversary that he in good faith was desisting, or intended to desist, from further aggressive action,'" the right to act in self-defense is revived. *Dennison*, 115 Wn.2d at 617 (quoting *State v. Craig*, 82 Wn.2d 777, 783, 514 P.2d 151 (1973)). And where the victim was the aggressor in an earlier encounter that ended because the

8

victim and defendant have withdrawn, the victim's earlier aggression does not excuse the defendant from provoking a later assault. *State v. Brown*, 3 Wn. App. 401, 403-04, 476 P.2d 124 (1970).

Cooper relies on Nuttall's testimony that he grabbed and pushed Cooper. Cooper's argument overlooks that even if Nuttall provoked the encounter, a reasonable person in Cooper's situation would not have returned to the restaurant and struck Nuttall with the cane. Cooper's first aggressor argument also overlooks Nuttall's testimony that he went to sit down and then returned to the restaurant door only after he saw Cooper returning from the parking lot. Thus, Nuttall's testimony was that the initial encounter that occurred when Nuttall pushed Cooper out of the restaurant had ended and that both parties had withdrawn. Accordingly, even if Nuttall were the first aggressor in the earlier encounter, Cooper was not excused from returning to the restaurant and provoking another encounter, which culminated in Cooper striking Nuttall with the cane. *See Brown*, 3 Wn. App. at 403-04.

We hold that the trial court properly declined to give self-defense instructions.

## II. OPINION TESTIMONY

Cooper argues that his rights to a jury trial and to a fair trial were violated when the trial court allowed Officer Moses to testify that the cane was a "'weapon.'"[5] Br. of Appellant at 16. We hold that any error in this regard was harmless beyond a reasonable doubt.

---

[5] Cooper also appears to argue that this error impacted the jury's verdict on the deadly weapon enhancement for the second degree assault. However, the jury did not find the deadly weapon enhancement. Thus, his argument is relevant only to the conviction for second degree assault of Nuttall.

A. LEGAL PRINCIPLES

Even if a court determines that a claim of unobjected-to, allegedly improper opinion testimony is manifest constitutional error, harmless error analysis applies. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). To be harmless, the State must show that there is no reasonable doubt that any reasonable jury would have still reached the same result absent the error. *State v. Lamar*, 180 Wn.2d 576, 588, 327 P.3d 46 (2014); *State v. Binh Thach*, 126 Wn. App. 297, 313, 106 P.3d 782 (2005). The untainted evidence must be so overwhelming that it necessarily leads to a finding of guilt. *Binh Thach*, 126 Wn. App. at 313.

B. HARMLESS BEYOND A REASONABLE DOUBT

To convict Cooper of second degree assault, the jury had to find that Cooper either assaulted Nuttall "with a deadly weapon" or "intentionally assaulted . . . Nuttall and thereby recklessly inflicted substantial bodily harm." Clerk's Papers (CP) at 128. For the first alternative, a "[d]eadly weapon" was defined as "any weapon, device, instrument, substance, or article, which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." CP at 142.

All three witnesses from inside the restaurant—the cook, the cashier, and Nuttall—testified that Cooper used his cane to strike Nuttall in the face, breaking his nose. The cook's, cashier's, and Nuttall's testimony that Cooper used his cane to break Nuttall's nose went to whether the cane was a "[d]eadly weapon" because it showed that "under the circumstances in which it [was] used . . . [was] readily capable of causing"—and in fact did cause—"substantial bodily harm."[6] CP at

---

[6] A broken nose is "'[s]ubstantial bodily harm.'" RCW 9A.04.110(4)(b).

142. Cooper presented no contrary evidence. The cook's, cashier's, and Nuttall's testimony was distinct from and untainted by Officer Moses's "weapon" testimony, which Cooper claims was improper opinion testimony.

The cook's, cashier's, and Nuttall's testimony that Cooper broke Nuttall's nose with the cane amounted to overwhelming untainted evidence that Cooper's cane was a deadly weapon, such that he committed a second degree assault when he struck Nuttall with the cane. Further, that testimony established that Cooper purposely struck Nuttall, so that it showed that Cooper "intentionally assaulted . . . Nuttall and thereby recklessly inflicted substantial bodily harm." CP at 128. Thus, the evidence also established the alternative for the jury to find a second degree assault that did not involve a deadly weapon.

The overwhelming untainted evidence necessarily led to a finding of guilt of second degree assault, absent Officer Moses's "weapon" testimony. Accordingly, even assuming without deciding that Officer Moses's testimony about the cane being a "weapon" was improper opinion testimony, the error was harmless beyond a reasonable doubt. We reject Cooper's arguments to the contrary.

### III. LEGAL FINANCIAL OBLIGATIONS

Cooper argues that the trial court erred when it imposed mandatory LFOs without inquiring into his means to pay as required by RCW 9.94A.777.[7] The State responds that Cooper waived

---

[7] Cooper also argues that the trial court erred under former RCW 10.01.160 (2010) and *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), when it entered a boilerplate finding of ability to pay and required Cooper to pay mandatory LFOs. But *Blazina* applies to discretionary LFOs, and former RCW 10.01.160(3) does not give a trial court discretion regarding whether to impose mandatory LFOs. *See State v. Stoddard*, 192 Wn. App. 222, 225, 366 P.3d 474 (2016). Accordingly, Cooper's argument fails.

his argument related to RCW 9.94A.777. We exercise our discretion to reach Cooper's RCW 9.94A.777 argument and remand on this ground.

> (1) Before imposing any legal financial obligations upon a defendant who suffers from a mental health condition, other than restitution or the victim penalty assessment under RCW 7.68.035, a judge must first determine that the defendant, under the terms of this section, has the means to pay such additional sums.
>      (2) For the purposes of this section, a defendant suffers from a mental health condition when the defendant has been diagnosed with a mental disorder that prevents the defendant from participating in gainful employment, as evidenced by a determination of mental disability as the basis for the defendant's enrollment in a public assistance program, a record of involuntary hospitalization, or by competent expert evaluation.

RCW 9.94A.777.

At sentencing, Cooper did not argue that RCW 9.94A.777 gave the trial court discretion to determine whether to impose mandatory LFOs other than the victim assessment based on Cooper's mental health condition. Accordingly, the trial court imposed the mandatory LFOs for DNA fees and the criminal filing fee. *See* former RCW 43.43.7541 (2011) ($100 mandatory DNA fee); former RCW 36.18.020(2)(h) (2013) ($200 mandatory filing fee).[8]

Although Cooper did not raise RCW 9.94A.777 until his appeal, we exercise our discretion to reach this issue. *See State v. Tedder*, 194 Wn. App. 753, 756, 378 P.3d 246 (2016); *see also State v. Blazina*, 182 Wn.2d 827, 835, 344 P.3d 680 (2015) (exercising its discretion to reach an unpreserved objection to imposition of discretionary LFOs in light of the "[n]ational and local cries for reform of broken LFO systems").

---

[8] The trial court also imposed the mandatory victim assessment. *See* RCW 7.68.035(1)(a). But RCW 9.94A.777(1) does not provide for the mandatory victim assessment to be waived, and Cooper's arguments accordingly do not affect the imposition of this LFO.

Cooper was involuntarily committed before trial. He also professed to be on social security due to mental illness, and at sentencing the State acknowledged that Cooper was homeless at the time of the incident and had mental health issues and a significant criminal history. Despite the evidence in the record suggesting that Cooper suffered from a mental health condition preventing him from participating in gainful employment, the trial court never fully inquired into Cooper's ability to be gainfully employed. We remand to the trial court to consider whether to impose the DNA fee and criminal filing fee pursuant to RCW 9.94A.777(1) after taking into consideration evidence of Cooper's mental health condition.

## IV. SAG ISSUES

### A. "NO-SHOW" WITNESS

Cooper appears to argue that it was error for the State not to call a witness who would have testified in his favor. The witness to whom Cooper appears to be referring was subpoenaed by the State but failed to appear at Cooper's trial. Although Cooper's attorney stated at first that she would call this "no-show" witness to testify for Cooper, Cooper's attorney later stated that she had decided not to call the witness. The record shows that the State was not at fault for the "no-show" witness's failure to appear, and we reject this argument.

### B. WITNESS CREDIBILITY

Cooper argues that the restaurant manager and employees lied under oath. But a determination of witness credibility is for the trier of fact and not subject to review by this court. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Cooper's argument accordingly fails.

## C. MATTERS OUTSIDE THE RECORD

Cooper argues that (1) the restaurant manager tampered with evidence and (2) the State failed to call other witnesses whose favorable testimony was allegedly noted in a police report. We do not consider his arguments, which rest upon matters outside the record.

On direct appeal, we cannot consider arguments that rely on matters outside the record. *State v. Rice*, 159 Wn. App. 545, 575, 246 P.3d 234 (2011), *aff'd*, 174 Wn.2d 884, 279 P.3d 849 (2012).

1. VIDEO

Cooper relies on the State's introduction of footage from only 6 of 18 cameras as evidence that the manager tampered with the cameras. The restaurant manager explained that he did not record footage that did not show who broke the door, such as footage from the kitchen. The manager also explained that some cameras were not functional. Nothing in the record supports that the manager concealed footage that would have exonerated Cooper or otherwise tampered with evidence. Thus, any evidence to support Cooper's argument necessarily is outside the record on direct appeal, and we do not consider his argument further.

2. WITNESSES

Cooper claims a police report supports that the State failed to call favorable witnesses. But contrary to Cooper's arguments, the record does not contain any evidence that the witnesses not called by the State other than the "no-show" witness discussed above would have testified favorably. Accordingly, Cooper's argument rests upon matters outside the record.

### D.  FAILURE TO IDENTIFY

Cooper argues that two of the State's witnesses could not identify Cooper as the person who struck Nuttall.  This argument appears to be a challenge to the sufficiency of the evidence that Cooper was the perpetrator and is rejected.

Although Cooper is correct that the cook and cashier could not identify Cooper as the man with the cane, he overlooks that Nuttall and Officer Moses—the victims of the assaults—identified Cooper.  Nuttall's and Officer Moses's identifications were sufficient evidence to prove that Cooper perpetrated the assaults and malicious mischief.  *See State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).  Accordingly, Cooper's failure-to-identify argument lacks merit.

We affirm Cooper's convictions but remand for the trial court to consider whether to impose the DNA fee and criminal filing fee under RCW 9.94A.777.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, C.J.

MELNICK, J.